GIBSON *v.* PETERS, (two cases.)

(*Circuit Court, E. D. Virginia.* July 2, 1888.)

1. UNITED STATES DISTRICT ATTORNEY—COMPENSATION—SERVICES TO RECEIVER OF NATIONAL BANK.

Under Rev. St. U. S. § 380, providing that "all suits and proceedings arising under the provisions of law governing national banking associations, in which the United States or any of its officers or agents shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury," it is the duty of such district attorney to act as counsel for the receiver of an insolvent national bank, such receiver being a United States officer, appointed by the comptroller of the currency; and the appointment of special counsel by such receiver, though sanctioned by the comptroller, does not affect such district attorney's right to compensation for services as such counsel, in suits to which such receiver was a party, it appearing that he was ready and offered to perform the same, and did perform them in so far as the opposition of the receiver allowed,—no want of skill, diligence, or industry being imputed to him.

2. SAME.

Such section does not require a district attorney to wait until actually instructed by the solicitor of the treasury to enter upon the duties of counsel to such receiver, but, if the solicitor fails to give directions, he may nevertheless enter upon the discharge of such duties, and recover compensation therefor from the receiver.

3. SAME—AMOUNT.

Under Rev. St. U. S. § 823, fixing the compensation which shall be allowed and taxed in favor of attorneys in the United States courts, but providing that nothing therein shall be construed to prohibit attorneys from charging their clients other than the government such reasonable compensation for their services in addition to the taxable costs as may be in accordance with general usage, or may be agreed upon; and section 5238, requiring all expenses of the administration of an insolvent national bank to be paid out of the assets of the bank,—the compensation of the district attorney in such suits is not limited to the fees prescribed by law in suits to which the United States is a party; but the United States not being a party to or interested in such suits, and the district attorney's compensation therein not being audited by any of the treasury officers to whose supervision his accounts as district attorney are subjected, he is entitled to the usual compensation for such services, the same to be paid out of the assets of the bank.

4. SAME.

Rev. St. U. S. § 299, directing that accounts of district attorneys for services rendered in cases in which the United States are interested, though not a formal party to the record, and in which officers of the United States are sued for acts committed or omitted in the legal discharge of their official duties, shall be settled at the treasury, and that the fees allowed shall be assimilated to those allowed in cases in which the United States is an actual and formal party, does not apply to such suits, the United States not being a party thereto or interested therein, and counsel fees not being required to be paid from the public treasury; nor does it affect the right of the district attorney to recover a reasonable compensation for services therein beyond the fees allowed by law.

Petitions by J. C. Gibson, United States attorney for the Eastern district of Virginia, against William H. Peters, receiver of the Exchange Na-

tional Bank of Norfolk, Va., to recover for counsel fees alleged to have been rendered such defendant as receiver.

*Robt. M. Hughes* and *Leigh R. Page,* for plaintiff.

*T. S. Garnett,* for receiver.

HUGHES, J. In these suits the United States district attorney for this district sues the receiver of the late Exchange National Bank of Norfolk for compensation as counsel in certain suits in which the district attorney either actually performed services as counsel, or was ready and proffered to do so, but was prevented by the receiver. The receiver, in whatever he did, acted under the direction of the comptroller of the currency, who, about the time of appointing the receiver, appointed also a special counsel, with the design, as has subsequently transpired, of superseding the district attorney as counsel of the receiver. The receiver was appointed on the 9th of April, 1885, and was in immediate need of the services of counsel. Mr. Waddill, who was then district attorney, at once proffered his services, which were declined. About that time there was a change in the incumbency of the office of district attorney, and the plaintiff in these suits was not appointed and commissioned until the month of June following. He at once made known to the receiver his readiness to enter upon the duties of counsel, and, as far as he knew, or could know, of the litigation in which the receiver was engaged, gave attention to it. He also gave general attention to the affairs of the bank in the hands of the receiver. This officer, under the instructions of the comptroller of the currency, at first refused to accept the services of the plaintiff. A correspondence resulted between the district attorney and the solicitor of the treasury, which latter officer wrote on the 14th of August, 1885, a letter which concludes as follows:

"Whether sufficient reason existed in the present case to warrant the employment of special counsel for the receiver I am not advised. But as counsel has been employed by the receiver who has brought suit in his behalf, I shall presume in the present instance that this course was proper; but, in accordance with the view held by me, I think it necessary that you should also appear in such suits as an officer of the United States, and its interest, and take part in their conduct and disposal. I therefore so direct."

The district attorney did accordingly, in pursuance of this instruction, participate in the suits in which the receiver was a party, but there was not a full acquiescence in this state of things by the receiver, acting under the instructions of the comptroller. In his letter of August 14, 1885, to the district attorney, the solicitor of the treasury had referred him for further advice to the attorney general of the United States. Acting upon that advice, the plaintiff did address himself to the attorney general, and received from that officer a letter, dated December 1, 1886, in which he said, among other things:

"The comptroller of the currency is an officer of the United States. The receiver whom he may have appointed is an agent of the United States. Hence all suits or proceedings to which they, or either of them, are parties, by virtue of their official or trust relations to a national bank, come within the intent of the law, and by its provisions should be conducted by the United States

attorney of the proper district. This view is fully corroborated by the opinion delivered by Solicitor General Phillips as early as July, 1874, and is sustained by the supreme court of the United States in the case of *Kennedy* v. *Gibson*, 8 Wall. 504, which declares that the receiver is an agent of the United States, and, according to the fifty-sixth section of the act, his suit should have been conducted by their attorney. To the same effect is the rule in *Bank* v. *Bank*, 14 Wall. 400, which thus states the rule: 'Suits and proceedings under the act in which the United States or their officers are parties, whether commenced before or after the appointment of a receiver, are to be conducted by the district attorney, under the direction of the solicitor of the treasury.' This section (380) then, properly interpreted, relieves the comptroller or receiver of the responsibility of selecting counsel to conduct suits or legal proceedings under the provisions of the act, and devolves the duty upon the United States attorney, whose services cannot be forestalled by a prior retainer, and who, by law, is required to take charge of the business, subject to such supervision and direction as may be called for in his action by the solicitor of the treasury, who, by the same section, is charged with the duty and responsibility incident thereto. The question suggested, as to whether section 380 is directory or mandatory, is immaterial, as, in either event, the law is a rule which should be obeyed."

These letters of the attorney general and solicitor of the treasury were based upon section 380, Rev. St. U. S., (section 56 of the national banking act,) which provides that "all suits and proceedings arising out of the provisions of law governing national banking associations, in which the United States or any of its officers or agents shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the solicitor of the treasury." It is settled law that the receiver of a bankrupt national bank is an officer of the United States. William H. Peters, the defendant in the suits at bar, was appointed by the comptroller of the currency, under a law of congress, to wind up the affairs of a bank organized and administered under the same law. It is a part of the banking policy of the United States that banks organized and conducted under the law shall, when they fail, be wound up under the direction of the comptroller of the currency, a United States officer, by a receiver, an agent of the United States, appointed by the comptroller. It is a part of the same policy that the suits and settlements in which the receiver shall be engaged shall be conducted by the district attorney of the district in which the bank did business, who is an officer appointed by the president, is dominated by the attorney general, and acts under the direction of the solicitor of the treasury. It is not the policy of the law that the comptroller of the currency shall wield the great power of winding up the affairs of all the insolvent national banks of the United States exclusively by his own appointees, responsible to him alone; that is to say, by receivers appointed by himself acting in conjunction with special counsel, appointed by himself, taking instructions exclusively from himself, and exempt from the control of the solicitor of the treasury and the attorney general. The same reasons which dictated the policy of winding up the affairs of this class of banks by an officer of the United States, appointed by and acting under the direction of the comptroller, doubtless dictated the placing of the affairs of the

broken banks in the hands of attorneys of the United States, appointed by the president, controlled by the attorney general, and directed by the solicitor of the treasury. It does not seem to be the policy of the law to place as much power in the hands of the comptroller of the currency as he would possess if, by himself appointing special counsel for his own receivers, that counsel should be exempted from all control by the attorney general, and all direction by the solicitor of the treasury.

But whatever may be the policy of the law in this respect, thus it is written that "all suits and proceedings" in which a receiver shall be party plaintiff or defendant "shall be conducted by the district attorneys of the several districts." It is useless, therefore, to consider further whether the law did in fact devolve upon the plaintiff in the suits at bar the duty of conducting those in which the receiver was plaintiff and defendant in administering his trust. This was his duty, imposed by express law in terms that seem to be imperative. The appointment of special counsel to, and the exclusion of the district attorney from, service as receiver's counsel, is an evasion of that supervision of the solicitor of the treasury, and of that responsibility to the attorney general, which it was the policy of the law to establish by imposing the duty of receiver's counsel upon the district attorney.

It does not appear that the district attorney failed to discharge his duty in the matter legally falling to his charge with all the fidelity and efficiency of which the attitude assumed towards him by the receiver under the instructions from the comptroller permitted. Want of skill or diligence or industry has not been imputed to him by the defense. And the question presented is whether or not he is entitled to such compensation for his services in the particular suits in which the pleadings before us show that he claims compensation, as may be in accordance with general usage. Section 823 of the Revised Statutes, in connection with several succeeding sections, fixes with precision the compensation that shall be allowed and taxed in favor of attorneys in suits conducted in the courts of the United States; but provides that nothing therein shall be construed to prohibit attorneys from charging to and receiving from their clients other than the government of the United States such reasonable compensation for their services, in addition to the taxable costs, as may be in accordance with general usage in their respective states, or may be agreed upon between the parties. The object of the section, in its first clause, is to define the amount of counsel fees that are to be taxed as costs in suits; and in its second clause, its object is to authorize attorneys to receive, beyond these taxed fees, such additional compensation from their respective clients as may be reasonable, and as may accord with usage in their respective states, or as may be agreed upon. The district attorney is one of the officers whose taxable fees are enumerated in the sections of chapter 16 to which section 823 refers in its first clause. He is indisputably one of the attorneys whose taxable fees are thus limited. If, therefore, he was in the mind of the legislature when it indited the first clause of the section, he was necessarily in its mind when inditing the second clause, which allows attorneys generally to receive reasonable compensation, in

addition to that taxed as costs from clients other than the government of the United States. It is plain that if the district attorney's compensation for services rendered to a receiver were rendered to the United States, and was to be paid by the United States, he would not receive any other compensation than is allowed by law for services to the government, among which are the allowances prescribed by the section of the Revised Statutes to which section 823 refers. But the United States were in no manner interested in the suits, for services rendered in which the district attorney now claims compensation. In *Case* v. *Terrell*, 11 Wall. 199, the supreme court said that the receiver, though an agent of the United States, represents the bank, its stockholders, its creditors, and does not in any sense represent the government, (page 202;) and further on declares that the "United States can not be subjected to litigation growing out of its relations to these banks in all the various courts in which their affairs may be the subject of judicial controversy," (page 203.) In neither one of the suits for conducting which compensation is now claimed, was the United States a party, or at all interested; yet the law directed the district attorney to conduct them. Suits by or against bank receivers being suits in which the United States have no interest, the law is naturally silent as to the compensation to be paid him; leaving that to be determined between client and counsel, as in other cases. It has been customary since the national banking system was established, for this compensation to be allowed and paid by the comptroller of the currency. This usage has been pursuant to section 5238 of the Revised Statutes, which requires that "all expenses of any receivership shall be paid out of the assets of such association, before distribution of the proceeds thereof." Among the most important of these expenses is the compensation due to counsel who shall conduct for the receiver the suits in which he shall be a party. The state of the law on this subject would therefore seem to be as follows: Section 380 directs the district attorney to conduct all suits in which the receiver may be a party; and section 5238 requires all expenses of the administration of his trust to be paid out of the assets of the bank whose affairs he is liquidating, before distribution; among which expenses compensation to counsel for services in conducting "all suits and proceedings of the receiver" are necessarily to be included.

Very elaborate argument was made at the bar on behalf of the defense insisting that the compensation due to the district attorney for professional services prescribed by section 380 is not to be measured by usage or agreement, as authorized by section 823 in its second clause, but must be submitted to one or the other of the bureaus at Washington, and its amount determined there, in the manner obtaining in respect to services rendered in behalf of the government; or else that its amount must be assimilated to the fees there allowed. While this contention would be undeniable in many cases in which the compensation is payable by the national government out of the public moneys, it is not true when the services are rendered in cases in which the government has no interest, brought or defended by the receiver of a national bank. Section 5238 expressly requires this expense, and all other expenses in-

curred by the receiver, to be paid out of the fund in his charge; and the general accounting officers of the treasury have no supervision of the receiver's accounts. The supreme court has expressly held that the United States cannot be subjected in any manner to the litigations of receivers, and if not in any manner, then not in the important matter of pecuniary expenses. If those laws of congress which are intended to protect the treasury of the United States from excessive charges are to be construed to contemplate officers whose compensation is not payable by the government, then the receivers of insolvent national banks are prohibited from employing special counsel; for section 365 of the Revised Statutes provides that "no compensation shall hereafter be allowed to any person besides the respective district attorneys, and assistant district attorneys, for services as an attorney or counselor to the United States, or to any branch or department of the government thereof, except in cases specially authorized by law, and then only on the certificate of the attorney general that such services were actually rendered, and that the same could not be performed by the attorney general, or solicitor general, or the officers of the department of justice, or by the district attorneys." If the construction put by defendant's counsel upon other legislation of the same class were put upon this section 365, then no one but the district attorney would be competent to act as counsel for bank receivers; and if their contention be correct in respect to his fees, then the district attorney would be under the necessity, for the meager salary of $200 per annum, of doing not only the regular work of his office, but of conducting all of the litigation of the receiver in addition. The bureau of banking and currency is certainly an important "branch or department of the government." If the services rendered to a receiver by a district attorney do in fact fall within the purview of General Statutes of the United States of the class of section 365, then the comptroller of the currency has violated the law in appointing special counsel for this receiver; then such appointment is null and void; then all payments made to special counsel by the receiver are recoverable in restitution by the creditors of the insolvent bank.

The court is not called upon in the cases at bar to pass upon the legality of the appointment of special counsel to a bank receiver, but I feel free to say that the General Statutes regulating the compensation of district attorneys apply much more exclusively to services rendered to the government than the general terms of section 365 apply to compensation of special attorneys for the services which they render. The district attorney is identified by section 380 as the person who shall act as counsel of the receiver in his various litigations. As district attorney he is required by law to take charge of those litigations in the United States courts and in the state courts. Though district attorney, he acts, not for the United States, but only for the receiver, and is compensated by the receiver. He conducts the receiver's suits wherever they are brought or defended. The various sections of the Revised Statutes which regulate or limit his fees, and prescribe the manner in which they are to be ascertained, audited, and paid, relate exclusively to his services in behalf

of the United States, rendered in the federal courts. They do not relate to his services rendered to clients "other than the government" of the United States. They cannot, therefore, refer to services of the district attorneys rendered to the receiver of a bank in suits brought or defended, in which the United States is neither interested nor a party. Nor is his compensation audited by any of the general accounting officers of the treasury, to whose supervision his accounts, *qua* district attorney for services to the government, are subjected. The law directs his compensation to be paid by the receiver for whom he acts, and the accounts of the receiver are not subjected by law to the supervision of those officers. This fact would alone differ his compensation as counsel for the receiver from that drawn *qua* district attorney from the United States.

It is useless to consider *scriatim* the various statutes and authorities that were cited by counsel for the receiver in support of their general contention that the only compensation which the district attorney can receive for any services is limited to the amount authorized to be taxed as costs in federal courts, or directed to be paid by the attorney general, and must be similar in amount to those which are subjected to the auditing of one or other of the comptrollers of the treasury. The statutes and authorities cited for that proposition are found on examination to contemplate no other compensation than what is payable to district attorneys, out of the treasury of the United States, for services rendered in behalf of the United States in suits in which the government is a party, or is interested, out of moneys appropriated by congress. Section 299 is one of the latter class, upon which much stress was laid in the argument at bar by counsel for defendant. This section directs that accounts of district attorneys for services rendered in the cases which it mentions shall be settled at the treasury, and that the fees allowed shall be assimilated to those allowed in cases in which the United States is an actual and formal party. The cases mentioned by this section are: (1) Those in which the United States are interested, though not a formal party to the record; and (2) cases in which officers of the United States are sued for acts committed or omitted in the legal discharge of their official duties *The Arlington Case*, (*U. S.* v. *Lee*, 106 U. S. 196,) 1 Sup. Ct. Rep. 240, was a distinguished one, which falls within both of the classes defined by this section. The suits contemplated are those in which the district attorney appears for the United States, or for an officer whom the United States are bound to protect in the discharge of official duty. They are suits in which his services are rendered for the United States, and are compensated out of the public treasury. His fees in such suits are required by section 299 to be assimilated to those allowed him by law in cases in which he serves the United States, nominally as well as actually, and in which he is paid out of the public treasury. The section does not in its purview contemplate cases where the services are not rendered for the benefit of the United States, and are not paid for out of the public treasury. It does not contemplate, either expressly or inferentially, services rendered to the receiver of a national bank, in which the United States have no interest whatever, and which section 5238 ex-

pressly provides shall be paid for out of the assets of the national bank represented by the receiver. See Bolles' Nat. Bank Act, 211; *Richmond* v. *Irons*, 121 U. S. 35, 37, 65, 66, 7 Sup. Ct. Rep. 788; *Case* v. *Terrell*, *supra*. Section 823 expressly distinguishes such cases from those in which the district attorney renders services to other clients than the government; and section 5238 directs that all expenses of bank receivers shall be paid out of the funds of the banks which they have in hand. The statutes and authorities referred to are therefore not only not in point, but they contemplate services which are essentially different from those provided for by sections 380, 823, and 5238.

The point is also made that until the solicitor of the treasury had actually instructed the plaintiff to enter upon the duties of counsel to the receiver he could not do so, inasmuch as section 380 requires him to "act under the direction of the solicitor of the treasury." It was attempted, in the case of *Bank* v. *Kennedy*, 17 Wall. 19, to put this same construction upon the language of another section of the national banking law requiring the receiver to act "under the direction of the comptroller of the currency" in his administration of his trust. A receiver had brought a suit, without instructions from the comptroller of the currency to do so, and it was insisted that the suit was for that reason improperly brought; and could not be maintained. But the supreme court overruled the objection, and held substantially that it is the duty of the receiver to bring suit whenever he deems it necessary, and that the phrase, "under the direction of the comptroller," means only that he is subject to the direction of the comptroller in the course of his performance of duties devolved upon him by the law. He must go on with those duties, and is not to be paralyzed in the discharge of them by the failure of the comptroller to advise or direct. The same is true with respect to the district attorney. The law requires him to conduct all the litigation of the receiver. In the performance of this duty he is subject to the direction of the solicitor of the treasury; but if this officer fails to give directions, the district attorney is not by that fact released from the discharge of the duties imposed upon him by section 380, and must perform them nevertheless. The appointment of special counsel by the comptroller for the receiver cannot justly intercept from the district attorney what would be a proper compensation if he alone had performed the service. The law imposes upon him the duty of such counsel, and if he was ready to perform it, proffered to do so, and did perform it as far as practicable for him to do so, under the opposition of the receiver, his right to compensation cannot be defeated by this wrongful opposition.

On the whole case, it is clear to me that it is not only the right, but the duty, of the district attorney to conduct the litigation of the receiver of a national bank; that his compensation for this service is payable by the receiver out of assets of the bank in his hands, and not by the United States; that the amount of this compensation is not to be determined by the statutes declaring what the district attorney shall receive from the United States for services rendered in behalf of the government, but is left by the latter clause of section 823 to be regulated by usage; and that,

if it be shown that he was ready to perform the duty imposed by section 380, proffered to perform it, and did perform it as far as the opposition on the part of the receiver to his doing so permitted, he is entitled to proper compensation, notwithstanding the employment by the receiver of special counsel for the purpose of superseding him, or for any purpose more meritorious.

As to the amount that should be allowed the district attorney in the two claims preferred in the two suits under consideration, I am willing to make it the same as is allowed by the receiver to special counsel.

———————

The foregoing opinion was filed on the 2d July, 1888. The cases had been tried, argued, and submitted on the 10th of January preceding,— Judges BOND and HUGHES sitting,—under a stipulation submitting all questions of law and fact to the court. Judge BOND had left the country on the 2d June for a visit of four months or more to Europe, without having filed an opinion. Motion was entered on July 2d for judgment and decree. The motion was heard on the 18th July, after notice to defendant, who resisted it on the grounds shown in the following supplemental opinion:

### SUPPLEMENTAL OPINION.

#### (July 18, 1888.)

HUGHES, J. Since filing my opinion in this case I have received the following communication from the solicitor of the treasury:

"DEPARTMENT OF JUSTICE. OFFICE OF THE SOLICITOR OF THE TREASURY.

"WASHINGTON, D. C., July 11, 1888.

"SIR: I have seen a copy of your opinion in the cases of *Gibson* v. *Peters, Receiver,* but have no information as to whether in point of fact Judge Bond concurs with or dissents from your opinion. As the questions involved are important in both of these cases, and in other cases pending, I deem it desirable that an appeal shall be perfected, if possible, to the supreme court, with a view of having a final adjudication. If it is true that Judge Bond dissents, the cases will be placed in a position which will render such an appeal practicable. If the matter has not been considered by Judge Bond, so that it can be determined as to whether he concurs or dissents, I respectfully suggest that before the record is made up by the entry of judgment that fact should be ascertained, so that it may be a part of the record. Very respectfully,

"C. S. CARY, Solicitor.

"*Hon. R. W. Hughes, Judge Cir. Ct. U. S. E. Va., Abingdon, Va.*"

Let it be remembered that in neither of these cases are the United States a party of record, or interested to the amount of a dollar. As to the suggestions of the above letter, I endeavored when the circuit judge was last here to obtain his opinion in these cases, but doubtless from the pressure of other more important matters, and his almost constant engagements in his arduous circuit, he has not been able to furnish it. I cannot believe that he would now, when outside of his jurisdiction, and in a

foreign country, give his views of the case, even to so high an official as the solicitor of the treasury, especially if he were advised that it was sought to make those views the basis of judicial action by his associate judge, and that, too, without the papers in the cause, without notice to one of the parties who might be affected by the opinion, and on the request of parties who, however interested in the questions at issue, are yet strangers to the record. For I have not yet been able to see how the United States are interested in this litigation, and must look upon the acts of the officials who are making this request as entirely unofficial and voluntary. If this case is appealable under the law, every facility will be afforded the defendant to exercise that right. If it is not appealable, I have no right to delay the decision of the case, already long delayed, merely because the questions involved may be interesting or important. Courts sit to do justice between man and man; not to decide moot questions of law. To impose upon a suitor the long delay of an appeal when an appeal does not lie, is itself an injustice. I cannot make one litigant's case the means of settling questions for other cases. They must be settled as they arise. I cannot await the result of communications to the circuit judge, but will enter judgment for the plaintiff.