UNITED STATES v. POTTER.

(Circuit Court, D. Massachusetts. November 28, 1892.)

No. 1,212.

**1.** NATIONAL BANK—PRESIDENT—FALSE ENTRIES—INDICTMENT.
    An indictment against the president of a national bank under Rev. St. U. S. § 5209, for making false entries in the books of the bank, which charges that it was done "with intent to injure and defraud the said association and certain persons to the grand jurors unknown," is sufficient, so far as concerns the allegations of intent. U. S. v. Britton, 2 Sup. Ct. Rep. 512, 107 U. S. 655, followed.

**2.** SAME.
    When the indictment alleges that the false entries in question indicated that there was then in the paying teller's department of the bank a certain amount in gold, legal tenders, and gold certificates, when such amount was not there in fact, it is not necessary that it should further allege that such amount was not then in other departments of the bank. U. S. v. Britton, 2 Sup. Ct. Rep. 512, 107 U. S. 655, followed.

**3.** SAME—SHOWING CONTEXT.
    In addition to the entries themselves, the indictment need set out the context only when it so modifies the entries as to be, in presumption of law, a part of them.

**4.** SAME—SPOLIATIONS.
    The fact that the note teller's and paying teller's books, in which it is charged the president made the false entries on which the indictments are based, are usually kept by those officers without interference by the president, does not invalidate the indictment; for the presumption that these acts were so far beyond the range of his duty as to be mere spoliations is at best one of fact, and not of law.

**5.** SAME—FALSE ENTRIES IN REPORTS.
    Counts charging false entries by the president in reports of the condition of the bank, which allege that the reports were made in conformity

with the law, and then set them out by their tenor, are bad for their failure to allege specifically that the reports were verified and attested by the cashier.

At Law. Indictment against Asa P. Potter for violating the national banking laws.

For statement of facts, see preceding case, 56 Fed. Rep. 83.

Frank D. Allen, U. S. Dist. Atty.

W. S. B. Hopkins and Henry D. Hyde, for defendant.

PUTNAM, Circuit Judge. On the 11th of November, 1892, the indictment in this case was partly reviewed by an opinion filed in U. S. v. Potter, (No. 1,211,) 56 Fed. Rep. 83. In that opinion the conclusion was reached that, so far as any counts in it charged the accused with making false entries in reports attested by him as a director, they must be held bad, because they connected him with them only as director, and did not contain any allegation that he was president of the association, and could not be aided in this deficiency by the other counts.

The counts in which he was described as president, charging him with making false entries in reports, were substantially approved, barring only two questions, as follows:

First. Whether the fact that the tenor of the reports, as set out, showing that they were apparently verified by the cashier, raises a legal presumption that any entry made in them by the president would be in the nature of spoliation, and therefore only a fictitious, forged, or unauthorized entry, within the meaning of those words as explained in connection with the indictments against Jonas H. French and Thomas Dana, filed in U. S. v. Potter, (No. 1,211.)

Second. These counts allege that the reports were made, "as required by law to be made, to the said comptroller of the currency," "in pursuance of the request of said comptroller, and upon and according to a form duly prescribed by said comptroller, * * * and were each one of the five reports duly required by law to be made to the said comptroller during said year last above mentioned, * * * and purported to show, as required by law, and did in substance and effect purport to indicate * * * in detail and under appropriate heads the resources and liabilities *. * * at the close of its business on said twenty-eighth day of February, which said twenty-eighth day of February was * * * the day which said comptroller had duly specified, * * * which said report was * * * a report * * * in that behalf duly required by law to be made to said comptroller, and which said report was * * * of the tenor following." Here the report is set out by its tenor in full, and on the face of the tenor it appears to be attested by the cashier, and verified by three directors; but there is no allegation in either count that it was so verified and attested, unless that is covered by the words already cited, "duly required by law."

Passing by these questions for the moment, I will take up the counts 1 to 18, each inclusive, touching the alleged false entries

in the books of the bank. To these the counsel for the accused at the first argument made 10 specific objections.

Objections 1, 2, 6, 9, and 10, touching the allegations of intent, are met by the form of counts approved in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512.

Objection 3, that the false entries were not of a nature to deceive, and 5, that there is no allegation that the gold, legal tenders, and gold certificates which these counts allege were not in the paying teller's department, were in no other department of the bank, and all the suggestions contained in 5, except so far as they relate to matters which might be proven in defense, are met by the rulings in U. S. v. Britton, 107 U. S. at page 664, 2 Sup. Ct. Rep. 512.

Objection 4, that, when the entry is not by itself intelligible, the context should be set out, does not apply under the circumstances of this case. The context would need to be set out when it so far modifies an entry as to be in presumption of law a part of it; otherwise not. On this point the pleader is clearly within U. S. v. Britton, 107 U. S. at page 663, 2 Sup. Ct. Rep. 512.

The clerical slip relied on in objection 7 is plainly made good and corrected by what follows.

That the references to U. S. v. Britton, 108 U. S. 193, 2 Sup. Ct. Rep. 526, relied on in objection 3, have no application to this case, follows inevitably from the conclusions in Id., 107 U. S. 655, 2 Sup. Ct. Rep. 512. Indeed, through all these 18 counts the pleader has followed with precision the forms approved in the latter.

The court therefore holds to be good all the counts, 1 to 18, each inclusive, touching false entries in books, repeating what was said in the opinion of the court in No. 1,211, (U. S. v. Potter, 56 Fed. Rep. 83,) that, for the reasons there stated, the court is not hereby prejudiced as to any points touching these counts which have not been brought to its attention.

At the reargument, counsel for the accused made an additional point against these counts, because the books to which they relate are described as "note teller's cash book" and "paying teller's cash book," and claimed that there was a radical distinction between this case and U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, because it appears negatively that the entries in such books could not have been within the line of duty of the president. In substance, the counsel claimed that in this respect there is an incongruity similar to that which appeared in the indictments against French and Dana, in that the indictments charged them as directors with making false entries in reports, over which, as mere individual directors, the presumption of law is that they have no authority or power.

It is true, as a matter of fact, there is an incongruity in this particular to which counsel call attention; but there was the same incongruity in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, in which the president was charged with making false entries in a book of the association known as "Profit and Loss, Number Six." It cannot be denied that by the common practice of banking

associations the president does not make entries in books like those described in U. S. v. Britton, or in this case, either by his own hand or otherwise, as such books are within the province of the cashier, and he, his official bond, and the sureties thereon, are responsible for the same and their correctness. But the distinction which the counsel overlooks is that this is a mere presumption of fact, and in no way one of law, such as existed in the cases against Dana and French, and is therefore insufficient to overcome the direct and positive allegations that the president made these entries, which allegations appear in U. S. v. Britton, and reappear in precise terms in this case. Although, in the present case, the books are designated "note teller's cash book" and "paying teller's cash book," yet there is no allegation that as a matter of fact they were kept by a note teller, paying teller, or cashier, or by any officer of the bank especially and exclusively designated for that purpose; there being in this respect the same absence of any allegation of this character that there was in U. S. v. Britton.

The counsel also insist that U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, is overruled on certain important points by Id., 108 U. S. 193, 2 Sup. Ct. Rep. 526, and they cite especially the following expression relating to Britton, who was the president of the bank, namely: "At all events, it is not charged that it was his duty to prevent such transfer, and this constitutes a fatal defect in the indictment."

This expression does apparently to some extent sustain the general theory of this court in its consideration of this lot of indictments touching the officers of the Maverick National Bank; but it does not contravene anything which appears in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512. The decision in 108 U. S., 2 Sup. Ct. Rep., coming so soon after that in 107 U. S., 2 Sup. Ct. Rep., leaves a presumption that the supreme court had not changed its views; because, if it had in any respect so changed, it could not have failed to have had in mind so recent a decision as that in 107 U. S., 2 Sup. Ct. Rep., and to have stated the fact of its dissent. The later case touches an entirely different class of duties from 107 U. S., 2 Sup. Ct. Rep., one relating to criminal negligence on the part of the president, and the other to an act. One, therefore, might require specific allegations concerning the duty of the president, which the other would not. Certain it is that in disposing of the issues before it the supreme court, in 107 U. S., 2 Sup. Ct. Rep., found it necessary to pass upon the form of counts then submitted to it, and decided those which have been followed by the pleader in this group of cases to be good; that the case in 108 U. S., 2 Sup. Ct. Rep., does not assume to overrule anything in 107 U. S., 2 Sup. Ct. Rep.; that, even if inferentially it could be held to be inconsistent in some particulars with the earlier case, this court would not be justified, in the absence of something very direct and express, in assuming that it overruled it; and that, on the whole, so far as these pleadings are concerned, this court is bound to apply the rule in the earlier

case to its full extent, without evasion or avoidance, direct or indirect, leaving the accused for his remedy, if he is entitled to any, to the appeal which the law now gives him.

The counsel for accused also refers to Claassen v. U. S., 142 U. S. 140, 12 Sup. Ct. Rep. 169, and states that the counts in that case alleged that the president, there charged with embezzlement, did "by virtue of his said office and employment," etc.; and that, therefore, by implication, the rule of pleading in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512, was condemned. Some of the reasoning which applied in determining the effect of U. S. v. Britton, 108 U. S. 193, 2 Sup. Ct. Rep. 526, would prevent me from holding that the earlier Britton Case was overruled by Claassen v. U. S.; but another answer comes from the fact that in Claassen v. U. S. this earlier case is cited without disapproval.

On the other hand, the United States relies on certain expressions in U. S. v. Warner, 26 Fed. Rep. 616, decided in 1886, to the effect that it is sufficient that the prohibited act was committed by some one within the classes named in the statute, without regard to the question whether the act came in any way within the province of the official duty of the person charged. These expressions, however, are more than offset by the conclusion in U. S. v. Eqe, 49 Fed. Rep. 852, and by the various expressions contained in the decisions of the supreme court already cited, and in U. S. v. Northway, 120 U. S. 327, 333, 7 Sup. Ct. Rep. 580. On this point, Cross v. North Carolina, 132 U. S. 131, 10 Sup. Ct. Rep. 47, seems to be merely negative.

Therefore, on re-examination in the light of the suggestions made at the reargument, my earlier impressions are confirmed, that the statute is to be construed somewhat distributively; that subordinate officers are not to be charged under it for unlawful acts, so far out of the line of their duties that they amount to forgeries or larcenies, nor the superior officers with acts so far out of the line of their duties, or beyond the exercise of the powers conferred upon them, as to be mere spoliations. In other words, to adopt the phraseology of U. S. v. Northway, already cited, on page 333, 120 U. S., and page 584, 7 Sup. Ct. Rep., the statute necessarily implies that the acts charged upon the accused "were done by him in his official capacity, and by virtue of the power, control, and management which he was able to exert by virtue of his official relation." I also remain of the opinion that I am in all respects governed by U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512.

Applying these conclusions to the first question raised at the reargument, growing out of the fact that the reports appear by their tenor to have been verified by the cashier, I am struck by the proposition of the counsel for the United States that whatever presumption is raised by this is one of fact, and not of law; that the report is the act of the association, done through the executive officers designated by the statute,—that is, the president or the cashier, and therefore, by possibility, in part through each of them; that, although the cashier may have verified, the president may in fact be the responsible source of, the report; and that the positive allega-

tions in these counts charging false entries in the language of the statute overcome, so far as the pleadings are concerned, all presumptions of fact, as fully as did like analogous allegations in U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. Rep. 512.

As to the other proposition remaining on the reargument, I have to say at the outset that the reasoning of the court in U. S. v. Eqe, 49 Fed. Rep. 852, commends itself to my judgment, although, being a charge to a jury, it cannot, of course, have much weight merely as an authority. There the accused was held not liable for making a statement to the examiner, because, in the language of the court, "his act in complying with the examiner's request was voluntary. As an officer of the bank he was not required to perform it." I may also say, in the language of the same case, that the statute, so far as it relates to reports and book entries, is certainly highly penal, and should be strictly construed, because it imposes for the slightest offense and a very inconsequential act a minimum penalty of five years' imprisonment.

In the absence, therefore, of any authority cited to the contrary, I hold that no report is within the purview of this penal statute, unless it is shown to be in conformity with law in everything except in the matter of the false entry. There seems to be no question made on this point; because, as already stated, the pleader has in every count alleged that the report was made "to the comptroller of the currency of the said United States, as required by law to be made to the said comptroller of the currency," and each count proceeds to give the details of the report to which it refers.

The next proposition is that the counts now under consideration do not, according to the ordinary rules of pleading, allege that the reports were verified or attested. It is true that the tenor shows that apparently they were; but this court, in Indurated Fiber Industries Co. v. Grace, 52 Fed. Rep. 124, 128, with reference to a bill in equity, held as follows:

"It was also claimed that by making profert of the letters patent these specifications were made a part of the bill. This is undoubtedly correct. Nevertheless they were not thus made a part of it more effectually, or for any different purpose, than if set out in the bill at length. A bill in equity does not necessarily make all the statements of fact contained in a contract or letters patent or other instrument proper parts of its pleadings, either by referring to them, or by annexing as an exhibit, or by making profert, or by reciting the tenor at length."

With an ordinary declaration on a contract it would be at once admitted that it is not sufficient to merely set out the tenor of the contract, and that there must be a specific allegation of the details of its execution; and, of course, in indictments this rule would be held more strictly than in pleadings in civil proceedings. On this same principle it seems to have been held in U. S. v. Hearing, 11 Sawy. 514, 26 Fed. Rep. 744, and U. S. v. McConaughy, 33 Fed. Rep. 168, that in criminal proceedings for perjury the specific allegation that the witness was sworn must be made, although the tenor of the affidavit or deposition and jurat is set out.

The last step remains, which is to inquire whether the general

allegation that these reports were made "as required by law" is sufficient to dispense with a specific one of verification and attestation. I have already said that the ordinary rule is that, in criminal pleadings, it is not sufficient to allege that a certain thing is in conformity to law, but the facts must be set out, in order that the court may judge for itself. In U. S. v. Mann, 95 U. S. 580, it was alleged in the language of the statute that certain checks were "subject to taxation;" but the court held that this was insufficient, and it was held that the details should have been alleged, namely, that they ought to have been stamped at the time they were made, signed, and issued. In U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. Rep. 571, the court said that one of the objects of an indictment is "to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had;" and it continued, "that for this, facts are to be stated, not conclusions of law alone." No authority at all in point has been cited by either counsel. The forms in the work so commonly accepted (Wharton's Precedents of Indictments and Pleas) are varied according to the nature of the instrument concerned, (2d Ed., forms 267, 290, 307, 316, 606.) The following is all that appears on this point in the brief of the counsel for the United States:

"As to the criticism that 'the counts in question do not set out that the reports were verified and attested, but on this point allege only that they were in the form required by law,' it is submitted that, while 'ordinarily it is not sufficient in criminal pleadings to allege merely that a matter or thing conforms to law, but the details must be set out, so that the court can apply the law, and determine for itself,' the indictment against Potter does give all the details by copy. The law requires verification and attestation, and the indictment alleges generally conformity to law, and specifically states the facts by placing before the court and the accused precisely and clearly what was done. The general rule referred to in the quotation would be in force if the indictment merely alleged conformity to law, and went no further. In other words, the allegations in the indictment that the defendant made a false entry in a report made to the comptroller, which report is charged in the indictment as one of the five reports of the association required by law to be made to the comptroller; that said report was made to the comptroller at his request, and upon and according to a form duly prescribed by him; that said report contained a detailed statement of the condition of said association, particularizing; together with the report itself, which is set out according to its tenor,—are sufficient to charge that the report was such a report of the association, a false entry in which by the president of said association, as alleged, is punishable under section 5209 of the Revised Statutes."

This merely negatives the proposition submitted for argument, and does not explain why it was not as needful to specifically allege the facts of verification and attestation as the other details which were set out in the pleadings. I am unable to say that this is a mere matter of form within Rev. St. § 1025. Therefore, being left to work out my own conclusions from general principles, and believing that upon correct rules of pleading the verification and attestation should have been set out specifically, I must hold the counts under consideration invalid.

The conclusion is that there must be entered a judgment sustaining all the counts touching false entries in books, and quashing all which allege false entries in reports.