The grand jury, impanneled in Hamilton county for the January Term, submitted to the judge of the court a communication containing certain inquiries, to which reply was made as to the principles of law involved, which are embodiéd in the above syllabus. The communication and reply are subjoined:
To the Hon. Jacob H. Bromwell, Judge of the Common Pleas Court, presiding in Boom 6.
The grand jurors of the January Term, 1907, respectfully represent to the court that during our investigation into the alleged unlawful deaths of one William H. Curnayn and one Ferdinand Knoesel, who were killed December 30, 1906, at Warsaw and Wilder avenues, when car No. 484 of the Cincinnati Traction Company was wrecked, the testimony showed—
First. That the motorman who was operating said car on said day had been employed by said company only about three weeks, and was wholly inexperienced in the operation of cars.
Second. That the brakes on said car were absolutely deficient, and that two out of the four brake-shoes were so worn down that *34 they would not set properly when the brake was tightened, and the car could not be controlled at stops.
Third. That the brake-chain on said car broke when the motorman was attempting to set the brake thereon when said car was descending Warsaw avenue.
Fourth. That the motorman on said car on the fatal trip, before going up the hill on Warsaw avenue, complained to his superior officer of the condition of the brakes on said car, and requested that this car be sent to the barn and that he be given another one, but that said motorman was told by his superior officer to make said trip with said car.
The jury find that as the result of these facts, and the gross negligence and carelessness of said company and its agents as aforesaid, said Cumayne and Knoesel met their deaths, and the jury therefore desire the court to instruct them — ■
First. As to whether or not the Company can be indicted under any law of the state, on account of- the unlawful deaths of said persons; and,
Second. Can any officer, or agent, or servant, or employe, of said company be indicted under any law of this state, for so negligently and carelessly causing and contributing to the deaths of said persons. . Very respectfully submitted,
Wm. D. Innes, Foreman.
Reply oe Judge Bromwell.
The Grand Jury oe Hamilton County, Ohio.
Gentlemen — In answer to your inquiry as to whether either the Cincinnati Traction Company or any of its officers, agents, servants or employes can be indicted on account of the deaths of William IT. Curnayn and Ferdinand Knoesel, caused, as you state, by the gross negligence and carelessness of. said company and certain of its officers, agents, servants or employes, I beg to state:
It is a well established principle of law in this state, ivhich has been repeatedly affirmed in a large number of cases by all *35 of our Courts, that there-are no common law crimes in Ohio. A few of these eases are cited as below.
In the case of The State v. Springer, 3 O. N. P., 121, the court said —
“There are no common law crimes in this state; they are statutory or they do not exist.”
In the ease of Strong v. The State, 2 Ohio Nisi Prius, page 97, the decision was the same, citing Smith v. State, 12 O. S., 469, referred to hereafter.
In the case of Steube v. The State, 3 C. C., 389 (a proceeding in contempt), the court said—
“It is claimed that we can not be governed in this state by the common law on the subject of contempt for the reason that our courts have no common law jurisdiction. It is true that in Ohio the common law is adopted only so far as adapted to our circumstances. It is equally true that as to crimes and offenses the common law never was in force in Ohio. ’ ’
In the case of Hoetelling v. The State, 3 C. C., 631, the court said — •
“But in this state the common law as to crimes having been entirely abrogated by statute, it is necessary that all the essential ingredients of the crime as prescribed by the statute should be set forth in the indictment.”
In the case of Winn v. The State, 10 Ohio, 345 (a case of certiorari, the court said—
“Before the act allowing' writs of error in criminal cases, it was considered the settled law of the state that no power existed in the Supreme Court to award them; the reason of which was that the courts have no common law jurisdiction in criminal cases. ’ ’
Page 347: “But with us it has always been a maxim (I may say a part of the common law of Ohio), that the whole course of procedure relative to crimes against the state should be the subject of legislative.enactment. There are the wisest reasons for the adoption of this principle, and, once adopted in the gross, it becomes impossible not to follow it in its details. ’ ’
*36 In the case of Vanvalkenburg v. The State, 11 Ohio, 404, 406, the court says:
“It is a well settled rule of criminal procedure that, in all statutory offenses, the indictment must pursue the words of the statute substantially in setting out the offense. "With us there is no such thing as common law crimes. ’ ’
In the case of Hall v. The State, 20 Ohio, page 7, the court said in the first syllabus:
“Penal statutes are to be construed strictly and can not be extended by implication to cases not falling within their terms. ”
In the case of Sutcliffe v. The State, 18 Ohio, 476, the court said:
1 ‘ There is no common law crime in this state and we, therefore, look always to the statute to ascertain what is the offense of the prisoner and what is to be his punishment upon conviction. The count under examintaion describes the crime of manslaughter at the common law; it is drawn after the approved form adopted in the prosecution of such crimes and is without defect as a common law indictment.
“In deciding upon the question raised, it will of course be proper to look at the crime of manslaughter as it existed under the comm'on law. It is there defined in the following language: ‘The unlawful killing of another, without malice, either express or implied; which may be either voluntarily, upon a sudden heat, or inadvertently, but in the commission of some unlawful act.’ 4 Blaekstone’s Com., 191.
“The word used as descriptive of the offense in the definition here given, is introduced into our statute, where it is denominated manslaughter, and where the entire description of the offense is embraced in these words, to-wit: ‘That if any person shall unlawfully kill another, without malice, either upon a sudden quarrel or unintentionally, while the slayer is in the commission of an unlawful act; every such person shall be deemed guilty of manslaughter.’ Swan’s Statute, 229.”
Page 477: “It was necessary to allege in the indictment that the prisoner was engaged in the commission of some unlawful act.”
In the case of Sovereign v. The State, 4 O. S., 492, the court said:
*37 “The Constitution secures the right of trial by such a jury, but does not execute itself; and no power could be derived by the court from the common law, because ‘our courts have no common law jurisdiction in criminal eases.’ ”
In the ease of Allen v. The State, 10 O. S., 301, the court said:
“But we have never had any common law offenses in this state. ’ ’
In the ease of Smith v. The State, 12 O. S., 469, the court said:
“It must be borne in mind that we have no common law offenses in this state. No act or omission however hurtful or immoral in its tendencies, is punishable as a crime in Ohio unless such act or omission is specially enjoined or prohibited by the statute laws of the state. It is, therefore, idle to speculate upon the injurkms consequences of permitting such conduct to go unpunished, or to regret that our criminal code has not the expansiveness of the common law.”
In the case of Mitchell v. The State, 42 O. S., 383, the court says, in the first clause of the syllabus:
“In this state, neither the common law in relation to crimes, nor the common law distinction between felonies and misdemeanors, nor the doctrine of merger in criminal cases, has at any time existed.”
On page 385, Judge Okey said:
“In Ohio, as under the federal government (citing authorities), we have no common law offenses. No act, however atrocious, can be punished criminally except in pursuance of a statute or ordinance lawfully enacted.”
The same construction has been put upon the criminal law by the United States courts in the following eases: U. S. v. Worrall, 2 U. S., 384; U. S. v. Hudson and Goodwin, 7 Cranch, 32; U. S. v. Coolidge, 1st Wheaton, 415; U. S. v. Britton, 108 U. S., 197, and in other cases.
Unless, therefore, an act is by some statute of Ohio declared to be an offense against the written law of the state and made *38 punishable by fine, imprisonment, or otherwise, the courts have no jurisdiction to try and punish the commission of said act.
The sections of our statute in-relation to homicide, including manslaughter, are as follows:
Sec. 6808. “Whoever purposely, -and either of deliberate and premeditated malice, or by means of poison, or in perpetrating, or in attempting to perpetrate, any rape, arson, robbery, or burglary, kills another, is guilty of murder in the first degree.”
Sec. 6809. “Whoever maliciously places an obstruction upon a railroad, or displaces or injures anything appertaining thereto, with intent to endanger the passage of any locomotive or car, and thereby occasions the death of another, is guilty of murder in the first degree.”
Sec. 6810. “Whoever purposely and maliciously, except as provided in the last two sections, kills another, is guilty of murder in the second degree.”
Sec. 6811. “Whoever unlawfully kills another, except as provided in the last three sections, is guilty of manslaughter.”
Prior to the codification of our statutes manslaughter was defined as follows:
“That if any person shall unlawfully kill another without malice, cither upon a sudden quarrel, or, unintentionally, while the slayer is in the commission of some unlawful act, every such person shall be deemed guilty of manslaughter.” (1st Swan and Critchfield, 403).
In the case of Johnson v. The State, 66 O. S., 63, the court, referring to the definition last given, said:
“The present Section 6811 is not different in substance and meaning from the original section above quoted, and to ascertain the elements of the crime of manslaughter we look to the original as it stood before codification or revision. Therefore, to convict of manslaughter, it is incumbent upon the state to establish that the killing was done ‘either upon a sudden quarrel, or, unintentionally. while the slayer was in the commission of some unlawful acl.”
It is conceded that in the question you have submitted there is no statement of any act done by the traction company or its *39 officers, etc., that would show malice or intent to injure or kill; there is also nothing- to show that the killing was “upon a sudden quarrel.” There is left only one other point to dispose of in reaching our conclusion, viz: Was the traction company or its officers, etc., engaged “in the commission of some unlawful act”?
To answer this question we must first ascertain what is meant by an unlawful act, as used in this definition.
There was at one time some uncertainty as to whether an act, in order to be unlawful, had to be specifically prohibited by statute or ordinance or whether it might not be unlawful, even if not made. so by the Legislature, if it was an offense at common law. But, in this state, there can be no further doubt upon the subject. As shown by the long list of decisions which I have cited above, there are no common lav) crimes in Ohio.
An unlawful act, therefore, must be'one which is made so by some specific act or ordinance.
In many of the states the manslaughter statutes are much broader and go into detail more fully than ours. In quite a number death resulting from gross negligence, where the slayer was not .doing an unlawful act (that is, an act prohibited by law), is made manslaughter. In some, with statutes nearly the same as our own, the courts have held differently from our Supreme Court. By way of illustration I cite the following decision of the Indiana Supreme Court. The definition of manslaughter as given in the Indiana Statute, Section 1981, is as follows:
“Whoever unlawfully kills any human being, without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter.”
Under this statute, which you will perceive is almost identical with our own, the Supreme Court, in the case of State v. Dorsey, 118 Ind., 167, said—
“We do not mean to be understood, as holding that every careless or negligent act, whereby death ensues, constitute *40 ihalice; far from it. To constitute manslaughter the act causing death must be of such a character as to show a wanton or reckless disregard of the rights and safety of others, but not necessarily an act denounced by the statute as a specific crime.”
The manslaughter statute of New York is quite elaborate, consisting of fifteen sections, all of which I can not enumerate here, but will merely call attention to Section 195, which relates to the negligent use of machinery, etc. It reads as follows:
Sec. 195. “A person who, by any act of negligence or misconduct in a business or employment in which he is engaged, or in the use or management of any machinery, animals or property of any kind, entrusted to his care, or under his control, or by any unlawful, negligent or reckless act, not specified by or coming within the foregoing provisions of the statute or the provisions of some other statute, occasions the death of a human being, is guilty of manslaughter in the second degree.”
The Illinois and Missouri statutes, as well as those of other states, make killing, resulting from gross negligence manslaughter. The fact that these statutes exist and that we read in the daily press of indictments and convictions for manslaughter growing out of gross negligence has undoubtedly led the public generally to believe that the law of our state is also applicable to such offense.
I shall cite from two Ohio cases only, both quite recent and standing as the last expression of the Supreme Court upon this subject which I regard as settling the question conclusively.
The first is that of Weller v. State, 19 C. C., 166, decided in 1899. The second syllabus in this case is as follows:
“Where, in a prosecution for manslaughter, the state relies for conviction on the ground that the deceased was killed while the slayer was in the commission of an unlawful act, it must appear that the alleged unlawful act is a breach of some penal statute of the state; and it is not sufficient to show that such act engaged in was a crime or offense at common law.”
The common pleas court had charged practically that if the killing for which Weller had been indicted resulted from gross negligence on his part'he was guilty of manslaughter.
*41 The reasoning of the circuit court in deciding that the charge was improper is found at length on pages 174 and 175, which I will not, however, take time to cite.
The decision in that case was cited and approved by the Supreme Court, in the case of Johnson v. The State, 66 O. S., 59.
The facts in the Johnson case were as follows:
Johnson, an expert rider, rode his bicycle, which had no bell nor lighted lamp, at a speed of twenty miles an hour, along the main street of the town; it was about dusk, and many persons were-moving along and across the street; Johnson was riding with his- handle bars down and leaning forward but could see ahead of him; he collided with a person who was crossing the street at a usual crossing place, threw him some distance and caused injuries which resulted in his death. Each had seen the other an instant before the collision and each had tried to avoid it; Johnson did not intend to collide with the decedent and there never was any personal feeling between them.
On this state of facts' the trial court charged that gross negligence supplied the place of malice, as one of the essentials of manslaughter and the jury found Johnson guilty. This case was affirmed by the circuit court. The Supreme Court, however, said:
Syllabus: “In a prosecution for manslaughter, wherein the state relies for conviction on the ground that the deceased was killed unintentionally, while the slayer was in the commission of an unlawful act, it must be shown that the alleged unlawful act was prohibited by law; and it is not sufficient to establish that such act so engaged in, was a crime at common law, or one of gross and culpable negligence.”
On page 63 the court said:
“It is clear that from the facts and the instructions given the jury decedent was not killed by Johnson in a quarrel; nor was the killing intentional. Hence, the latter clause of the definition of the crime is the one to which our investigations should be confined. The state was required to show that while the killing was unintentional, it was done by Johnson while he was in the commission of some unlawful act, and the question *42 arises whether the negligent act or acts of the slayer, though no breach of any law, may be sufficient to constitute the unlawful act designated in the statute. Or, is the state required to show that he was in the commission of an act prohibited by law.”
The syllabus above given shows the final conclusion of the court.
And now the final test of your authority to indict in the case you have presented by your question is, was the traction company, or any of its officers, agents, servants or employes, at the time of the accident, engaged in the commission of any act which any law of the state or ordinance of the city declares to be unlawful and the violation of which could in any way have caused or assisted in causing the accident?
I have examined your statement of facts and have diligently searched the statutes and ordinances, but have failed to find any law of either state or city that, assuming the facts stated in your question to be true, they were violating. In this search I have had the valuable aid and assistance of Mr. Sawyer of the prosecutor’s office.
Failing to find that the traction company or any of its officers, etc., were, at the time of the injury, engaged in the commission of any unlawful act, whether grossly negligent or not, it becomes my duty to advise you that you have no authority, on the statement of facts submitted, to indict either or any of them for manslaughter.
For your convenient reference and information I attach hereto a summary of the manslaughter laws of a few of the states that you may make comparison with our own and see that with the same statement of facts the law in some of these states would make a killing caused by negligence manslaughter which, in our state, is not punishable by our criminal law.
Yours respectfully,
J. IT. Bromwell,

Judge Court of Common Pleas.