## Case No. 15,403.

### UNITED STATES v. HOWARD.

[3 Summ. 12.] [1]

Circuit Court, D. Massachusetts.    Oct. Term, 1837.

INDICTMENT—SURPLUSAGE—VARIANCE—MISNOMER.

1. Mere surplusage will not vitiate an indictment, and need not be established in proof.
[Cited in Com. v. Brailey, 134 Mass. 529; Com. v. Keefe, 7 Gray, 336; Hammons v. State (Tex. App.) 16 S. W. 100.]

2. But no allegation, whether it be necessary or unnecessary, more or less particular, which is descriptive of the identity of what is legally essential to the charge in the indictment, can be rejected as surplusage.
[Cited in U. S. v. Foye, Case No. 15,157; U. S. v. Thomas, Id. 16,473.]
[Cited in brief in State v. Robinson, 39 Me. 152; Cited in Com. v. Wellington, 7 Allen, 302; Com. v. Gavin, 121 Mass. 55; Com. v. Hartwell, 128 Mass. 419.]

3. A variance between the indictment and the evidence is not material, provided the substance of the matter be found.

4. In case of misnomer, a variance is fatal only where there is a misnomer of a party whose existence is essential to the offence charged in the indictment.

5. In an indictment under the act of congress of 1825, c. 276, §§ 22, 5 [3 Story's Laws, 1999; 4 Stat. 115, c. 65], the ownership of the vessel was alleged to be in William Nye and others, instead of Willard Nye and others. Held, that an allegation of the particular ownership is unnecessary and immaterial, and that the misnomer above mentioned is of no consequence; it being sufficient to allege that the owners are citizens of the United States.
[Cited in State v. Kaler, 56 Me. 94.]

Indictment alleging that the defendant [Isaac T. Howard], on the 10th of May, 1837, "in and on board a certain ship of the said United States, called the Mount Vernon, then lying within the jurisdiction of a foreign state or sovereign court, in the Roads of St. Helena, and out of the jurisdiction of any particular state of the said United States, the said ship then and there belonging to David R. Greene, Dennis Wood, Wil-

liam Nye, and Clement P. Covell, citizens of the said United States, with force and arms, with a dangerous weapon, did commit an assault upon one William B. Stanton, then and there belonging to the company of the said ship, and him, the said William B. Stanton, did grievously wound, the said Howard then and there belonging to the company of the said ship, to the great damage, &c. against the peace, &c., and contrary to the form of the statute, &c." Plea, not guilty. At the trial before the district judge, (Judge Davis,) the mate of the ship testified that the name of one of the owners of the ship was Willard Nye, and not William Nye, as stated in the indictment. And it was mentioned by S. D. Parker, (the counsel for the defendant,) that the true reading of the ship's register, (a copy of which was produced, and in evidence,) corresponded with the mate's testimony in that particular, and that the variance was fatal. The district judge instructed the jury that the asserted variance, if it should be sustained by the evidence, should be considered by the jury as immaterial, and should be disregarded by the jury; and that the legal effect of the variance would be open for the consideration of the court. The jury found the defendant guilty.

Parker now moved for a new trial, upon the ground of the misdirection, and cited 1 Chit. Cr. Law, 293, 296; Archb. Cr. Law, 11, 117–119; 1 Leach, 351; 2 Leach, 290; Id. 390; 1 H. Bl. 49; 1 Camp. 494; 1 East, 415.

Mills, Dist. Atty., cited on the other side, 2 Russ. Crimes, (2d London Ed.) 705, &c.; Pye's Case, Russ. & R. 9, note; s. c., 2 East, P. C. pp. 785, 786, c. 16, § 168.

STORY, Circuit Justice. The present indictment is founded on the act of 1825, c. 276, §§ 22, 5 [3 Story's Laws, 1999; 4 Stat. 115, c. 65], the 22d section describing the offence, and the 5th conferring jurisdiction on the court to try it. The language of the 5th section is as follows: "That if any offence shall be committed on board of any ship or vessel belonging to any citizen or citizens of the United States, while lying in a port or place within the jurisdiction of any foreign state or sovereign, by any person belonging to the company of the ship, &c., on any other person belonging to the company of the said ship, &c., the same offence shall be cognizable and punishable by the proper circuit court of the United States, &c., as if the said offence had been committed on board of the said ship or vessel on the high seas," &c. It is apparent, therefore, that the objection of variance in this case does not apply to any words descriptive of the offence charged in the indictment, but solely to the words which state the jurisdiction. It is as clear, that it is wholly immaterial who are the particular owners of the ship on board of which the offence is committed, provided only that the ship is owned by citizens of the

United States. Now it is not disputed that the Mount Vernon is a ship of the United States, and is wholly owned by American citizens. The question then is, whether, as the names of the owners are specially set forth (although it was wholly unnecessary) in this indictment, the variance in the name of Willard Nye, one of those owners, is fatal.

It will not be found easy to reconcile all the cases upon the subject of variance, either in civil or in criminal causes. In the latter the authorities are not always in harmony, even where the same circumstances have occurred. There are, however, some principles which will guide us in arriving at a correct conclusion; and as these principles will be found well laid down by Mr. Russell, in his work on Crimes and Misdemeanors, (pages 704–718, c. 4, § 3), with illustrative examples, I shall state them from his work, because I find them confirmed by the authorities cited by him. Two questions generally arise. The first is, what allegations must be proved, and what may be disregarded in evidence. The second is, what is sufficient proof of allegations, which cannot be disregarded in evidence. The former includes the consideration of what constitutes mere surplusage, in an indictment; the latter what properly constitutes variance. Mere surplusage will not vitiate an indictment, and need not be established in proof. The material parts which constitute the offence charged must be stated in the indictment, and they must be proved in evidence. But allegations not essential to such a purpose, which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence. But no allegation, whether it be necessary or unnecessary, whether it be more or less particular, which is descriptive of the identity of that which is legally essential to the charge in the indictment can ever be rejected as surplusage. The former proposition may be illustrated by cases which have actually passed in judgment. Thus, where the prisoner was charged with robbery near the highway, and the evidence proved the robbery in a house, it was held immaterial; for it was equally a robbery ousted of clergy, whether committed near the highway or elsewhere. See Summer's Case, 2 East, P. C. p. 785, c. 16, § 168; Rex v. Wardle, Russ. & R 9; 2 Russ. Crimes, 705. So in Pye's Case. Russ. & R. 9. note; s. c., 2 East, P. C. pp. 785, 786, c. 16, § 168, where the robbery was charged with being committed in the dwelling of A. W. The proof was that the robbery was committed in a house, but it did not appear who was the occupier of it: it was held immaterial. So. upon an indictment under the statute 8 & 9 Wm. III. c. 6, § 1, for having a die, made of iron and steel, in possession. it was held that, as it was immaterial as to the offence, of what the die was made, proof of a die either of iron or steel, or both, would satisfy the charge. Rex v. Oxford, Russ. & R. 382; Rex v. Phillips, Russ. & R. 369; 2 Russ. Crimes, 705. So an indictment for stealing so much lead "belonging to the Rev. G. C. W., and then and there fixed to a certain building called Hernden Church"; it was held that it should have been charged only as affixed to the church, and that therefore the allegation that it belonged to G. C. W. ought to be rejected as surplusage. Rex v. Hickman, 2 East, P. C. p. 593, c. 16. § 31. See, also, Rex v. Holt, 5 Term R. 446; s. c., 2 Leach, 593 (676). On the other hand, if a man should be charged with stealing a black horse, the allegation of color, although unnecessary, yet being descriptive of that which is material, could not be rejected as surplusage. 2 Russ. Crimes, 706. So upon an indictment for stealing live tame turkeys, the description of live could not be rejected as surplusage, and proof of stealing dead turkeys would not support the indictment. That was so held in Rex v. Edwards, Russ. & R. 497. Indeed, in such cases, an acquittal or conviction on one indictment would be no bar to another, for the identity could not be averred of the described animal.

In regard to the other question, what is sufficient proof of allegation, which cannot be disregarded as evidence, or, in other words, what constitutes a material variance in proof from the charge in the indictment, the general rule is that a variance between the indictment and the evidence is not material, provided the substance of the matter be found. Hence it is, that even in capital offences it is not necessary to prove more than the substance of the averment in the indictment. Thus, for example, in an indictment for murder, if it appear that the party was killed by a different weapon from that described in the indictment, it will still maintain the indictment; as, for example, if the wound or killing be alleged to be by a sword, and it be proved to be by an axe or staff; or is alleged to be by a wooden staff, and it be proved to be with a stone. For in all these cases the substance is the same, the wounding or killing with a weapon. So, if the indictment be of a death by one sort of poisoning, and it turns out in the evidence to be by another sort of poisoning, the difference is not material; for in each of these cases the mode of the death is substantially the same, viz. by poisoning. But, if the indictment charge a death by poisoning, it will not be supported by the proof of a death entirely different, as by shooting, starving, or strangling. This doctrine is clearly laid down by Mr. Russell, in his work on Crimes (2 Russ. Crimes, 701–712), and by Mr. East, in his work on Crown Law (1 East, P. C. p. 341, c. 5, § 107). Indeed Mackalley's Case in 9 Coke, 62, 66, where the indictment specially charged the murder of a sergeant at mace, in London upon an arrest, and supposed that the sheriff made a precept to the

sergeant for the arrest; and upon the evidence it appeared that there was no such precept, but that the sergeant made the arrest ex officio, at the plaintiff's request, upon the entry of the plaint according to the custom of the city; the proof was held sufficient; for the substance of the matter was, whether the defendant killed an officer in the lawful execution of legal process. S. C. 1 East, P. C. p. 345, c. 5, § 115; 2 Russ. Crimes, 711. So, in general, if the indictment charge the offence to be committed in a particular place within the county, it is not necessary to prove that it was committed in that place, or aver that there is such a place in the county; but only to prove that it was committed within the county. See 2 Russ. Crimes, 716, 717. In such a case, the place is immaterial, provided it be within the county; and it constitutes no part of the description of the offence. So, where an offence was alleged to be committed on the 20th of July, in the fourth year of the reign of King George the Fourth (although in fact tried in 1820, in the second year of the reign of George the Fourth), the judges rejected the words "fourth year of," as surplusage, and read the indictment as if it stood "on the 20th of July, in the reign of King George the Fourth"; and held the conviction right. Rex v. Gill, Russ. & R. 431, 432.

In regard to cases of misnomer, it will be found, that, in all the cases where the variance has been held fatal, it was a misnomer of a party whose existence was essential to the offence charged in the indictment; as, for example, in cases of theft, where the property is charged as that of A. B., and it turns out, in proof, to be of A. C.; or in cases of robbery, where the person robbed is alleged to be A. B., and it turns out on proof to be C. B. See 2 Russ. Crimes. 707, 714, 715.

Now, if we apply the principles here stated to the present case, it seems to me clear that the variance is not fatal. In the first place, the variance, as has been already stated, does not occur in the description of the offence. It occurs only in the clause which confers, or is supposed to confer, jurisdiction over the offence. Now that jurisdiction equally exists (as has been already stated), whoever are the owners of the ship, provided she belongs to citizens of the United States. The allegation of the particular ownership was wholly unnecessary; and is wholly immaterial. The words in the indictment allege the offence to be committed "in and on board a ship of the United States, called the Mount Vernon." Now under our laws, these words, "a ship of the United States," have a technical meaning; for the ship registry act (Act 1792, c. 45 [1 Story's Laws, 268; 1 Stat. 287, c. 1]),—and this was a registered ship—declares, that no ships, except those which are registered according to that act, shall be denominated and deemed ships or vessels of the United States, en-

titled to the benefits and privileges appertaining to such ships or vessels; and it proceeds to prescribe, that no ships or vessels, except those which are wholly belonging to citizens, shall be registered. Indirectly (though not as it should properly do), the indictment does contain an allegation of the American character of this ship, so as to found the jurisdiction. And if it had stopped here, a nice question might have arisen. how far such an allegation not stating in the terms of the act of 1825, c. 276, § 5 [3 Story's Laws, 1999; 4 Stat. 115, c. 65], that the offence was committed on board of a ship or vessel belonging to any citizen or citizens of the United States, but stating it in the manner above-cited. would have been sufficient to found the jurisdiction, or to sustain the indictment. But the indictment goes on to allege, "the ship then and there belonging" to certain persons (naming them), "citizens of the said United States." Now the substance of this allegation is, that all the owners of the ship are citizens; and this is strictly true, and was established in evidence. The misnomer is not in any part material to the jurisdiction, and the charge in its substance was proved so far as it bore on the question of jurisdiction. I think the names of the owners may be either rejected as surplusage; or the variance as to the proof was as to a fact purely immaterial. Pye's Case, Russ. & R. 9, note; 2 East, P. C. 785, 786; and Mackalley's Case, 9 Coke, 62, 66,—are far stronger cases of variance. And the variances upon indictments for murder, as to the weapon or other means used to effect the crime, are far more striking, as to a dispensation with exact proofs of circumstances alleged in the indictment.

Upon the whole. my opinion is, that the motion for a new trial ought to be overruled.

The district judge concurs in this opinion; and, therefore, let the motion be overruled. New trial denied.