RIEGER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 27, 1901.)

No. 1,392.

1. INDICTMENT—DESCRIPTION OF OFFENSE—VIOLATION OF NATIONAL BANKING LAW.
   In an indictment under Rev. St. § 5209, charging an officer of a national banking association with the willful misapplication of certain moneys, funds, and credits of the bank by using the same to discount an unsecured note of a person known to be insolvent, such note does not constitute the subject-matter of the offense, and need not be set out in hæc verba. A description by giving the date and amount and the name of the maker, so as to advise the accused with reasonable certainty what note is intended, is sufficient.

2. SAME.
   It is not a substantial defect in such an indictment to aver that the misapplication of the funds was without the knowledge "and" consent of the bank, its directors, etc., instead of using the disjunctive form.

3. SAME.
   An averment that defendant misapplied "certain moneys, funds, and credits" of the bank does not render the indictment bad for indefiniteness, where it is followed by an explicit statement that the misapplication was committed by means of discounting a note, sufficiently described, which was known by him to be worthless.

4. SAME—VARIANCE—DESIGNATION OF PERSONS OTHER THAN THE ACCUSED.
   An averment that such note was "made and drawn" by a person designated by his full first and sur names is supported by proof that it was made by such person, although it is not shown whether it was signed with his full first name or by his initials.

5. SAME—DESCRIPTION OF INSTRUMENT.
   The indictment averred that the note was dated on the 8th day of December, 1894, and was due and payable "on the 11th day of April, A. D. 1894." The proof corresponded with the indictment as to date,

but showed that the note was due on the 11th day of April, 1895. *Held*, that the mistake in the indictment was one so obvious that it could not have misled the accused to his prejudice, and that the variance was not fatal. The note not being the subject-matter of the offense, and the averment of the date of its maturity one which was immaterial and unnecessary to its identification, the allegation as to the day of maturity might be rejected as surplusage.

**6. SAME.**

An averment in the indictment that the misapplication of funds by the accused was for the benefit of himself "and other persons to the grand jurors aforesaid unknown" did not entitle the defendant to have the question whether the grand jury did in fact know, or should have known, the names of such other persons, submitted to the jury for the purpose of establishing a variance, since the failure to state such names, even if they might have been stated, could not have been prejudicial to defendant.

**7. CRIMINAL LAW—TRIAL—REFUSAL TO RE-READ INSTRUCTIONS**

A jury returned into court and requested the judge to re-read the portion of his instructions relating to the particular charge made in one count of the indictment. The judge did so, and the attorney for defendant then requested that the portion of the charge relating to the presumption of innocence and reasonable doubt be also re-read. This request the court refused, after having asked the jury if they desired to have such parts re-read, and received a reply, through the foreman, that they did not. *Held*, that such action by the court was not error.

**8. NATIONAL BANKS—OFFENSES—MISAPPLICATION OF FUNDS BY OFFICER.**

The willful misapplication of the funds of a national bank by an officer without the knowledge or consent of the bank, in violation of Rev. St. § 5209, is not changed, as to its criminal character, by the fact that the act subsequently became known to the officers of the bank, and that they impliedly consented thereto, by taking no action in regard to it.

**9. CRIMINAL LAW—TRIAL—INSTRUCTIONS.**

The refusal of the court in a criminal case to instruct the jury, as requested, that they might find the defendant guilty or innocent of some of the offenses charged in the indictment, and return a verdict of disagreement as to others, cannot be held error prejudicial to the defendant, where he was found guilty upon one count and acquitted upon the others. It must be presumed that the verdict would have been the same had such instruction been given.

**10. INDICTMENT—DESCRIPTION OF OFFENSE—MISAPPROPRIATION OF FUNDS OF NATIONAL BANK.**

Where an indictment, under Rev. St. § 5209, for a criminal misapplication of the funds of a national bank, fully describes the act constituting the alleged offense, so as to advise the accused of the particular transaction which is called in question, and the act is averred to have been done willfully and with intent to injure and defraud the bank, and without its knowledge or consent, it is sufficient to allege generally that it was done for the use, benefit, and advantage of the accused, or some company or person other than the bank, and a conversion of the fund or credit need not be averred.

**11. NATIONAL BANKS—OFFENSES—MISAPPROPRIATION OF FUNDS.**

To constitute the offense of willful misapplication of the funds of a national bank, under Rev. St. § 5209, it is not essential that the money should be actually withdrawn from the bank, but the offense may be consummated by giving fraudulent credits, and the transfer of the same in the usual way by means of checks. An indictment for such offense, alleged to have been committed by discounting a certain note, is sustained by proof that defendant, as president of the bank, without the knowledge or consent of the directors discounted such note, which he knew to be worthless and insufficiently secured, crediting the proceeds on the books of the bank to the maker, subject to his check; that the maker drew a check for the amount in favor of a third person, who in-

dorsed the same to defendant; and that defendant by means of such check paid a note held by the bank for which he was himself liable.

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Missouri.

Two indictments were returned against David V. Rieger, the plaintiff in error, in the United States district court for the Western division of the Western district of Missouri, charging him with the commission of various crimes defined by section 5209 of the Revised Statutes of the United States, while he was acting as president of the Missouri National Bank of Kansas City, Mo. The two indictments together contained 14 counts, and they were subsequently consolidated for trial before a single jury. Several of the counts were adjudged insufficient at the trial, and a direction was given, as to those counts, to return a verdict in favor of the defendant. The case was submitted to the jury on the remaining counts of the consolidated indictment, and the jury found the accused not guilty on all of said counts except one, as to which they returned a verdict of guilty. The count on which a conviction was obtained charged the accused with the willful misapplication of certain moneys, funds, and credits of the bank, contrary to the provisions of section 5209 of the Revised Statutes; said count being in the following form (italics have been employed, in copying the count, to direct attention more conveniently to certain parts thereof):

"The grand jurors of the United States of America, being duly selected, impaneled, sworn, and charged to inquire of and concerning crimes and offenses in the Western division of the Western district of Missouri, on their oaths present and charge: That on the 8th day of December, A. D. 1894, at the said Western division of the Western district of Missouri, one David V. Rieger was the president and one Robert D. Covington was the cashier of a certain national banking association, a body corporate then and there known and designated as the Missouri National Bank of Kansas City, in the city of Kansas City, in the county of Jackson and state of Missouri, which said national banking association had been theretofore created, organized, and established, and was then existing and doing a banking business in the city of Kansas City and county of Jackson,' in the state of Missouri, in the division and district aforesaid, under the laws of the United States. That they, the said David V. Rieger so being president and the said Robert D. Covington so being cashier of said national banking association as aforesaid, and by virtue of the official relation of the said David V. Rieger as president and the said Robert D. Covington as cashier of said national banking association, and by virtue of the power of control, direction, and management, which said David V. Rieger as such president and said Robert D. Covington as such cashier of said national banking association possessed over the moneys, funds, and credits of said national banking association, on the said 8th day of December, A. D. 1894, then and there at said city of Kansas City and county of Jackson, in the state of Missouri, in the division and district aforesaid, did willfully, wrongfully, unlawfully, and with intent to injure and defraud said national banking association and divers other persons to the grand jurors aforesaid unknown, *and without the knowledge and consent of the said national banking association, its board of directors and committees, and for the use, benefit, and advantage of the said David V. Rieger and the said Robert D. Covington and other persons to the grand jurors aforesaid unknown,* misapply *certain* of the *moneys, funds, and credits* of the said national banking association, to wit, the sum of fifteen thousand three hundred and forty-five ($15,-345) dollars, and of the value of fifteen thousand three hundred and forty-five ($15,345) dollars, in the manner and by the means following: That is to say, that they, the said David V. Rieger as president and the said Robert D. Covington as cashier as aforesaid of said national banking association, did on the said 8th day of December, A. D. 1894, willfully, wrongfully, and unlawfully, and with intent to injure and defraud said national banking association and said divers other persons to the grand jurors aforesaid unknown, then and there receive and discount, with the moneys, funds, and credits of said na-

tional banking association, *a certain promissory note made and drawn by one Benjamin W. Townley, dated on the 8th day of December, A. D. 1894, for the sum of fifteen thousand and six hundred ($15,600) dollars, due and payable on the 11th day of April, A. D. 1894,* a more particular description of which said note is to the grand jurors aforesaid unknown, and which said promissory note, when so received and discounted as aforesaid, was not then and there well secured, and they, the said David V. Rieger and the said Robert D. Covington, then and there well knew at the time, he, the said Benjamin W. Townley, being then and there wholly insolvent and owning no property subject to execution, as they, the said David V. Rieger and Robert D. Covington, then and there well knew at the time, and which said amount of fifteen thousand three hundred and forty-five ($15,345) dollars, it being the proceeds of the discount of said note aforesaid, was wholly lost to the said national banking association. And so the grand jurors aforesaid, upon their oaths aforesaid, do say that they, the said David V. Rieger as such president and Robert D. Covington as such cashier of said national banking association as aforesaid, *in the manner and form and by the means and for the use and benefit and with the intent and without knowledge and consent aforesaid,* fifteen thousand three hundred and forty-five ($15,345) dollars, of the said moneys, funds, and credits of said national banking association, wrongfully and unlawfully did then and there willfully misapply, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

Following a conviction upon the foregoing count, sentence was imposed on the accused, and the case is before this court for review on a writ of error sued out by him.

Frank Hagerman (Willard P. Hall, on the brief), for plaintiff in error.

William H. Wallace, Sp. Asst. U. S. Atty.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Certain technical objections were made in the lower court to that count of the indictment upon which a conviction was had, and the same objections are urged in this court. These will be first noticed. It is said—First, that the Townley note referred to in the indictment is not sufficiently described, because the name of the payee is not mentioned; second, that the pleader should have alleged that the misapplication of the funds of the banking association was "without the knowledge or consent" of the association, its directors and committees, instead of alleging such facts conjunctively by the use of the word "and"; and, third, that the allegation that the misapplication was "of the moneys, funds, and credits of said national banking association" is too indefinite for a criminal pleading. Each of these propositions must be adjudged to be without substantial merit and untenable. In some cases, as in prosecutions for forgery or uttering a forged instrument, the instrument constitutes the subject-matter of the offense, and it is necessary to describe the same with great particularity. It will be observed, however, that the Townley note is not mentioned in that part of the count in which the pleader describes the offense complained of in the language of the statute; but it is referred to in that part of the count where the pleader, for the benefit of the accused, and to enable him to

prepare his defense, states the manner and means by which the misapplication complained of was accomplished. In that part of the count it was only necessary, we think, to describe the Townley note in such a manner as would advise the accused with reasonable certainty what note was intended; and we entertain no doubt that the description given of the note by its date and amount and the name of the maker was fully adequate to identify it, without mentioning the name of the payee. Such being the fact, further descriptive words ought not to be required in a case like the one at bar, where a written instrument is referred to simply for the purpose of showing the manner and means whereby a misapplication of the bank's funds was accomplished. In such cases it is clear, we think, that the written instrument need not be set out in hæc verba, and to hold that the name of the payee ought to have been stated, together with the other marks of identification, would be equivalent to holding that the note should have been copied in full into the indictment. There is even less merit in the contention that want of knowledge on the part of the bank and its officers of a misapplication of the bank's funds should have been alleged disjunctively instead of conjunctively. It would have been sufficient to aver that the misapplication complained of was committed without the knowledge of the bank, its directors and committees, since such an averment would have implied that they did not consent to the wrongful act in question. The pleader, as we construe the allegation, avers that the act was done without their knowledge, and also without their consent, thereby alleging more than was necessary. But the fact that the averment was broader than it need to have been does not injuriously affect the pleading. To hold otherwise would be to indulge in hypercriticism. Neither can it be said that the allegation that the defendant misapplied "certain moneys, funds, and credits of the said national banking association" is too indefinite and renders the indictment bad; for whatever uncertainty arises from the use of the words "moneys, funds, and credits," in the first instance, is removed by a subsequent explicit statement that the offense committed by the accused consisted in discounting for his own benefit a note which was known to him at the time to be utterly worthless. For the reasons stated, we are of opinion that the three supposed defects in the indictment last enumerated were unimportant, that they did not operate to the prejudice of the defendant in any manner, and that they were properly disregarded by the trial court.

It is further urged in behalf of the accused that there was such a variance between the proof and the description given in the indictment of the Townley note as entitled him to an acquittal. The indictment referred to the note as one "made and drawn by one Benjamin W. Townley, dated on the 8th day of December, 1894, for the sum of fifteen thousand and six hundred ($15,600) dollars, due and payable on the 11th day of April, A. D. 1894." The proof, on the other hand, disclosed a note for the same amount and of the same date as that stated in the indictment, and signed either "Benjamin W. Townley" or "B. W. Townley," but "due and payable four months

after date," to wit, April 11, 1895. The point to be determined is whether this constituted a fatal variance, or one which should be disregarded. It will be observed that the indictment does not aver how the note was signed, whether "Benjamin W. Townley" or "B. W. Townley," the averment being that it was "made and drawn by one Benjamin W. Townley," and the proof discloses that it was made by him, so that the doubt raised by the evidence (the note having been destroyed or lost) as to the manner in which Townley's given name was written—whether in full or merely by signing the initial letters "B. W."—is of no importance, and does not create a variance. The fact chiefly relied upon is that the note was alleged to be due April 11, 1894, whereas the proof showed it to be due April 11, 1895. It is obvious, we think, from the nature of the mistake, which seems to have been made by the scrivener in drawing the indictment, that any intelligent person who chanced to read it would assume without inquiry that a mistake had been made, and that the period of maturity stated, to wit, April 11, 1894, was intended to be April 11, 1895, and that the indictment should be so read. We do not regard it as probable, or even as possible, that the accused was misled to any extent by the error in question, and for that reason the contention made in behalf of the accused cannot be sustained on the ground that he was prejudiced in making his defense because of the variance.

Counsel for the accused contend, however, that it is not necessary that it should appear that the variance was so far material as to mislead the accused or put him to any disadvantage in making his defense. They insist, in substance, that the prosecution was bound to prove the execution of such a note as was described in the indictment, although the averment as to the day of maturity might have been omitted, and that such particularity of proof was requisite because an offense could not have been charged without referring to the Townley note, and that under such circumstances every allegation tending to identify the note became and was material. The rule of law thus invoked is one which is applied most frequently in prosecutions for larceny and embezzlement, although it is not confined in its application wholly to that class of cases. When one is accused of stealing or embezzling property of any sort, the description of the thing stolen or embezzled must usually be proven strictly as averred. The examples which are usually given to illustrate this rule are as follows: If one is accused of stealing a white horse or live turkeys, he cannot be convicted by proof of the theft of a black horse or dead turkeys; and, if one is accused of causing the death of another by poison, a conviction cannot be obtained by proof that the death was occasioned in an entirely different manner, as by shooting or by the use of a deadly weapon. U. S. v. Howard, 3 Sumn. 12, 26 Fed. Cas. 388, Fed. Cas. No. 15,403, and cases there cited. The reason underlying the rule as applied in the foregoing instances is obvious; the reason being that the record of a conviction or acquittal, where the proof, as respects objects described, differs so widely from the allegation, may not be readily available as a bar to a second prosecution for the same

offense. We are not satisfied, however, that the aforesaid rule which is invoked in behalf of the accused has any application to the case in hand. The defendant below was charged in the first part of the indictment with a willful misapplication of the bank's funds to the amount of $15,345 for his own benefit and advantage, the misapplication of money or funds under such circumstances being the statutory offense; and, as we have before remarked, allusion was made in the indictment to the Townley note merely for the purpose of disclosing the method or the means whereby the misapplication was accomplished. The note was not the subject-matter of the offense, as it would have been if the defendant had been accused of stealing, embezzling, or forging it, but it was a mere instrumentality by which a misapplication of the bank's funds had been consummated. For that reason it was not necessary, we think, to describe it with the particularity that would have been necessary had it formed the subject-matter of the offense; and we are furthermore of opinion that greater freedom may be indulged in treating as surplusage certain words that were intended to describe the note, which described it imperfectly, especially as it is apparent that the accused was not prejudiced by such false details of description, but well knew what, note was intended. In indictments like the one now under consideration the note would have been sufficiently described if the description had been confined simply to the date, the amount, and the name of the maker, since it does not appear that Townley had executed more than one note to which such details of description could have applied. Under these circumstances, we perceive no sufficient reason why the unnecessary words, "due and payable April 11, 1894," may not be rejected as surplusage. The rule is well settled that even in criminal cases the substance of the issue only need be proven, and that if other matters are proven, not in strict conformity with the allegations of the indictment, which do not tend to the prejudice of the accused, the variance will not be esteemed material. In the case of Hall v. U. S., 168 U. S. 632, 18 Sup. Ct. 237, 42 L. Ed. 607, the indictment was for stealing money out of a letter which came to the defendant's possession as a postal clerk; and the indictment described the letter as one addressed to "Mrs. Susan Metcalf, No. 346 E. 24th St., New York City, N. Y., and * * * intended to be delivered by a letter carrier." The proof disclosed that the person and the number described were fictitious, there being no such person or number, and that it was not intended to be delivered in the manner alleged. The court held, however, notwithstanding the fact that the letter was not intended to be delivered, that the allegation to the contrary was immaterial, and the variance not fatal. In Putnam v. U. S., 162 U. S. 687, 16 Sup. Ct. 923, 40 L. Ed. 1118, an indictment for defrauding a national bank described it as the National Granite State Bank, while the evidence disclosed that its authorized name was the National Granite State Bank of Exeter. It was held that the variance was immaterial, since it was impossible to suppose that the accused had been in any way misled by the misnomer. And in a case heretofore cited (U. S. v. Howard, 3 Sumn. 12, Fed. Cas. No. 15,403), where

an indictment for an assault committed with a dangerous weapon alleged that the assault was committed on a vessel owned by William Nye and others, and the proof showed that the vessel was owned by Willard Nye and others, it was held that the variance was immaterial, because the allegation as to the particular ownership of the vessel was unnecessary. See, also, State v. Davis, 109 N. C. 780, 14 S. E. 55; State v. Bibb, 68 Mo. 286; People v. Phillips, 70 Cal. 61, 11 Pac. 493; U. S. v. Matthews (D. C.) 68 Fed. 880; Rogers v. State, 90 Ga. 463, 16 S. E. 205; Long v. State, 23 Neb. 33, 36 N. W. 310; Peyton v. Tappan, 2 Ill. 388. We conclude, therefore, that the variance complained of ought not to be adjudged material, and that an adjudication declaring it to be material and fatal would be in violation of the spirit and purpose of the federal statute of jeofailes. Rev. St. § 1025.

That count of the indictment under which a conviction was had alleged, among other things, that the misapplication of funds by the defendant was "for the use, benefit, and advantage of the said David V. Rieger and the said Robert D. Covington, and other persons to the grand jurors aforesaid unknown." In view of this allegation, it is insisted on the part of the accused that he was entitled to have the jury determine whether the grand jury did not in fact know when they returned the indictment the names of the other persons who realized a benefit or advantage by reason of the misapplication. It is said, in substance, that if the jury had found that the names of other persons benefited were known to the grand jury, or ought to have been known, it would have established such a variance between the proof and the allegation as in and of itself would have entitled the defendant to an acquittal. With reference to this contention it is quite sufficient to say that there was no substantial evidence, in our judgment, which would have warranted the jury in finding that the presentment was false, in that the grand jurors knew the names of other persons who were benefited directly or indirectly by the misapplication, and might have stated them. Moreover, it is impossible to see in what way the defendant was prejudiced by the supposed variance which he wished to establish. There was proof tending to show that the misapplication was for the benefit and advantage of the accused, and the jury were required to find that fact, and did so find. The defendant was not put to any disadvantage in making his defense, even if the name or names of some other person or persons who were likewise benefited were known to the grand jury, or might have been known, and the name or names of such person or persons were not disclosed. Altogether the point now under consideration seems so highly technical and unimportant as not to deserve serious consideration by an appellate court.

Again, it is said that the trial judge erred in refusing to re-read that portion of his original charge relating to "the presumption of innocence and reasonable doubt" when he re-read other parts of the original charge. The incident out of which this assignment of error arises, as disclosed by the record, was as follows: The jury returned into court on the day succeeding the submission of the cause, before a verdict had been reached, and requested the trial judge to

re-read to them so much of his original charge as related to the Townley transaction; that being the transaction complained of in the first count of the indictment, on which a conviction was obtained. The court complied with the request by re-reading its original charge relating to the Townley transaction, and gave some additional instructions relating thereto. Counsel for the defendant thereupon requested the trial judge to re-read those parts of the original charge relating to "the presumption of innocence and reasonable doubt." This the court declined to do, having first asked the jury if they desired to have those parts of the charge re-read, and having received a reply, through their foreman, that they did not. The case chiefly relied upon to sustain this contention is Spurr v. U. S., 174 U. S. 728, 19 Sup. Ct. 812, 43 L. Ed. 1150. The other cases cited by the defense seem to have no direct bearing on the point to be determined. In the Spurr Case the accused was indicted for willfully and unlawfully certifying certain checks on a national bank, knowing that the drawers did not have on deposit the requisite funds to meet the checks. One section of the Revised Statutes of the United States, to wit, section 5208, made it unlawful for an officer of a national bank to certify a check unless the drawer had on deposit at the time funds equal to the amount of the check. But this section merely rendered the act unlawful, without imposing a penalty. An act of congress passed in 1882 imposed a penalty for the willful violation of section 5208. After that case had been committed to the jury, and they had had the same under consideration for some hours, they returned into court and submitted to the trial judge the following request: "We want the law as to the certification of checks when no money appeared to the credit of the drawer." The trial judge thereupon read the first part of section 5208 of the Revised Statutes, and made some observations thereon. As the jury were retiring the defendant's attorney stated to the court that he thought the jury wanted advice as to the act of 1882, making it an offense to willfully violate section 5208, and, in connection with such remark, requested the court to explain that act to the jury; it being the one which made the act complained of criminal. This request was refused, and such refusal was held to be a material error. It is obvious, we think, that the case relied upon to sustain the defendant's contention is not a controlling authority in the case at bar. In the former case the court omitted to read and explain that portion of the statute which created the offense, and concerning which the jury, most likely, desired further advice. In the case in hand the instructions which counsel for the accused asked to have re-read were the common instructions relating to the presumption of innocence and reasonable doubt, which are given in all criminal cases, and with which laymen as well as lawyers are usually conversant. We must assume, from the reply of the foreman, that the jury did not desire to have those parts of the charge re-read, because they recollected the substance of the instructions, and understood perfectly that the presumption of innocence attended the accused until his guilt was established beyond a reasonable doubt, and that they were bound to acquit the accused if they entertained a reasonable doubt of his

guilt. This being so, the trial judge did not err in refusing to reread the two instructions.

Some other errors are assigned, which, in our judgment, do not require extended consideration. It is said that the trial court erred in charging the jury, in substance, that, in determining whether the Townley note at the time of its discount was adequately secured, they might consider what was realized by the receiver of the bank, something over three years after the discount, from certain property which was hypothecated at the time of the discount to secure its payment. We perceive no substantial error in the direction so given, because the court at the same time directed the jury to consider any facts and circumstances in evidence which tended to show that the property in question had depreciated in value after the Townley note was discounted, and before the receiver realized upon the property that had been hypothecated to secure it. With this admonition directing the attention of the jury to a possible depreciation in the value of the property through natural causes, we fail to see that the instruction given was in any respect erroneous.

It is said that an error was committed by the trial court in instructing the jury, as it did, in substance, that, if the alleged misapplication of the money and funds of the bank was without the bank's knowledge or consent at or before the wrongful act was committed, no subsequent knowledge or consent obtained or given by the bank could be considered by the jury as justifying the misapplication. We are of opinion, however, that this direction was right. If the act complained of at the time it was committed constituted a willful misapplication of the money or funds of the bank, and was an offense against the laws of the United States, the fact that the act in question subsequently became known to the officers of the bank, and that they impliedly consented thereto, by taking no action or making no complaint, cannot be regarded as condoning the offense or as altering its criminal character. This point was adjudged, in substance, in U. S. v. Youtsey (C. C.) 91 Fed. 864, 870, and with the views expressed in that case on the point in question we fully concur.

Again, it is said that the trial court erred in refusing to charge the jury, as requested, that the jury could find the defendant guilty or innocent of some of the various offenses charged in the indictment, and return a verdict of disagreement as to other counts. As we understand learned counsel for the accused, the benefit which the accused might have realized from this instruction was a verdict of disagreement on that count of the indictment upon which a conviction was obtained. Concerning this contention it is quite sufficient to say that the verdict of the jury cannot be impeached by indulging in speculations of that character. It must be presumed that the verdict of the jury finding the defendant guilty on the first count expressed the opinion of each and all of the jurors, founded upon the evidence and the instructions of the court, and that the result would not have been different if the refused request had been given. If it be conceded that the request was not objectionable in point of law, the refusal of the same was at most an immaterial error.

Two further contentions on the part of the accused that are closely related have been reserved for final consideration. The first of these contentions is that the count of the indictment heretofore quoted does not sufficiently allege a willful misapplication of moneys, funds, or credits to sustain a conviction; and the second is that the evidence produced at the trial in support of the count tended only to show a willful abstraction of a credit of the bank, and had no tendency whatever to establish a misapplication of funds or credits.

The argument in support of the first proposition is, in substance, that the charge preferred is defective for the reason that it contains no specific averment that the proceeds of the Townley note after the discount were converted to his own use by the defendant, or that they were converted to the use of any other person. Such an allegation, it is said, is necessary in an indictment under section 5209 for a willful misapplication of moneys, funds, or credits. We are not able to assent to this proposition. It is well settled by several adjudications that an indictment for the crime in question, although it is declared by statute to be only a misdemeanor, is not sufficient if the offense is described simply in the language of the statute. And the reason given to sustain this view is that the funds of a national bank may be misappropriated or dealt with wrongfully without incurring the penalty denounced by section 5209, and that the accused, even in prosecutions for a misdemeanor, is entitled to information of the precise nature of the act complained of, if the language of the statute will not convey such information. Hence an indictment under section 5209, besides alleging the offense of misapplying funds in the language of the statute, should descend to particulars, and describe the act or transaction which is claimed to be an offense, and the manner in which the statute was violated. Such particularity of averment is essential, not only to advise the accused of the proof that will be adduced against him, but also to differentiate the act complained of from other acts, amounting to a misappropriation of funds, which, although unlawful, are not criminal. U. S. v. Britton, 107 U. S. 655, 661, 2 Sup. Ct. 512, 27 L. Ed. 520; Id., 108 U. S. 193, 196, 2 Sup. Ct. 526, 27 L. Ed. 701.; Id., 108 U. S. 199, 206, 2 Sup. Ct. 531, 27 L. Ed. 698; U. S. v. Northway, 120 U. S. 327, 331, 7 Sup. Ct. 580, 30 L. Ed. 664; U. S. v. Harper (C. G.) 33 Fed. 471. In the first of the Britton Cases above cited it was said arguendo, while discussing the various offenses defined by section 5209, that "to constitute the offense of willful misapplication there must be a conversion to his own use or the use of some one else of the moneys and funds of the association by the party charged." An equivalent expression is found in U. S. v. Harper (C. C.) 33 Fed. 471, 478, and similar expressions, perhaps, may be found in other cases. But no controlling authority has been called to our attention in which it is held that an indictment for misapplying the funds or credits of a national bank must, in terms, allege a conversion of the same by the accused to his own use, or a conversion to the use of some one else. The proof adduced to support the allegation, which is usually found in such indictments, that the act was done "for the use, benefit, and advantage" of the accused, will

generally show a conversion. But an allegation that the fund or credit was converted, further than a conversion may be implied from the averment that the misapplication was "for the use, benefit, and advantage" of the accused or some other specified person, is, in our judgment, unnecessary. In the case of Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, an indictment for the willful misapplication of funds and credits underwent careful consideration, and it was adjudged sufficient, although it did not allege a conversion, but only alleged that the misapplication was "for the use, benefit, and advantage" of the accused. Such, also, seems to have been the form of the allegation in the case of U. S. v. Northway, 120 U. S. 327, 331, 7 Sup. Ct. 580, 30 L. Ed. 664, and the count was held good. We conclude, therefore, that if the act constituting an alleged criminal misapplication of the funds of a national bank is fully described in an indictment, so as to advise the accused of the particular transaction which is called in question, and the act is averred to have been done willfully and with intent to injure and defraud the bank, and without its knowledge or consent, it is sufficient to allege generally that the act was done for the use, benefit, and advantage of the accused, or some company or person other than the bank, and that the pleader need not allege a conversion of the fund or credit. It is clear, we think, that this should be the rule when, as in the case in hand, the indictment also alleges that by reason of the misapplication the fund or credit "was wholly lost" to the bank.

Inasmuch as the second contention of counsel last above stated is, in effect, that the count of the indictment on which a conviction was had charges one offense, to wit, a willful misapplication of money or funds, while the proof offered in its support tends to show the commission of another and entirely different offense, we deem it essential at this point to state some of the more material facts relating to the Townley note which the testimony adduced at the trial tended to establish: The Missouri National Bank of Kansas City, Mo., hereafter termed the "bank," was organized in January, 1891, and until its failure in December, 1896, David V. Rieger, the defendant, was its president, and had full control of its affairs and dictated its policy. On December 8, 1894, the bank held among its bills receivable a note for the sum of $15,000 that had been executed by John J. Rieger, a brother of the accused. The defendant claimed that this note represented funds of the bank which he, as president, had from time to time expended for its benefit, and that neither himself nor his brother were under a legal obligation to pay the same. The prosecution insisted, and adduced abundant evidence to sustain the contention, that the note represented an indebtedness of the defendant to the bank for borrowed money; that the bank had originally held the defendant's note for the indebtedness; and that he had caused it to be shifted into the name of his brother in February, 1893, for the purpose of concealing his indebtedness to the association. Some time prior to May 25, 1894, the bank had become the equitable owner and was in control of all of the tangible property of a manufacturing concern that had previously done

business at Kansas City, Mo., and had become insolvent, owing the bank about $17,000. It had acquired the property in question by foreclosing a mortgage upon the same in the sum of $4,000, which it owned. The title to this property stood in the name of A. J. Armstrong, who had purchased it at the foreclosure sale for account of the bank, and held it as its agent or trustee. On May 25, 1894, a corporation called the Hale Harness & Fire Supply Company was organized, with an authorized capital of $20,000; and upon its organization all of the aforesaid property was transferred to the corporation by Armstrong, with the knowledge and consent of the defendant. All but 10 of the 200 shares of the capital stock of this corporation were issued to Armstrong in exchange for the property aforesaid which he had transferred to it. He seems to have held the stock after it was issued to him merely as trustee for the bank. Afterwards, and on or about December 1, 1894, the defendant approached Benjamin W. Townley with a suggestion that he should purchase the stock in the supply company that was then held by Armstrong, and assume control of the company. Townley at the time had no means to buy the stock or conduct the business of the concern, as the defendant well knew, but he was given to understand that the bank would discount his paper to enable him to make the purchase. In accordance with the defendant's suggestion, Townley entered into negotiations with Armstrong, which resulted in a formal purchase of the stock of the supply company for the sum of $25,000. To consummate the purchase Townley executed two notes in favor of the bank,—one for $15,600, dated December 8, 1894, and due four months after date, which is the note referred to in the indictment, and another note in the sum of $9,200. The first of these notes the defendant caused to be discounted with the funds of the bank, without the knowledge or sanction of its directors or its discount committee. The net proceeds of the discount, to wit, $15,345, were placed to the credit of Townley on the books of the bank, and were made subject to his check. Thereupon, in payment for the stock aforesaid, Townley drew his check against this credit in favor of Armstrong for the sum of $15,000, and delivered it to him, and the latter indorsed it and subsequently delivered it to the defendant. The check was in due course of business charged against Townley's account, and contemporaneously therewith the note of J. J. Rieger for $15,000, then held by the bank, was entered as paid on its books, and was subsequently surrendered, either to J. J. Rieger or to the defendant, as having been fully paid and canceled. The residue of the proceeds of the discount of the Townley note, amounting to $345, remained to Townley's credit; and, as the evidence of the defendant himself shows that the Townley account with the bank thereafter remained an active account for some time, the presumption is, and the jury were fully warranted in finding, that that sum was eventually drawn out by Townley and used for his own benefit. The Townley note for $15,600 was renewed several times, either in the name of Townley or in the name of the Hale Harness & Fire Supply Company, but was never paid, although the stock of the supply company which Townley had purchased from Armstrong was

hypothecated by him to secure its payment. The receiver of the bank eventually succeeded in realizing about $2,000 by the sale of the stock, or by the sale of the property of the supply company which the stock represented, to be applied on the entire Townley indebtedness, which amounted at the time to more than $25,000. It was further proven in the course of the trial that while the bank was a going concern the defendant and two of his brothers had obtained large sums of money from the association, and that the notes which were originally executed by them for such loans had been retired from time to time with the proceeds of notes which the defendant had caused to be discounted for other persons and corporations whose credit was at the time bad; the result being that when the bank was closed by the comptroller it held worthless paper of other persons and corporations to the amount of about $81,000, representing money that had originally been obtained by the defendant and his brothers. Altogether, the testimony was ample, we think, to warrant the jury in finding, as they appear to have done, that the accused knew that the Townley note was not well secured when he directed it to be discounted and that he never expected the note to be paid by the maker, but did intend to use the proceeds to retire the J. J. Rieger note and to extinguish the liability evidenced by that instrument, so far as the books of the bank would disclose.

The argument in support of the proposition that the facts above detailed have no tendency to sustain the charge which is made by the indictment proceeds upon the theory that no money or funds were willfully misapplied, within the meaning of the statute, because no money was paid to Townley at the time his note was discounted. It is said that the bank parted with money only at the time when the debt evidenced by the Rieger note was contracted; that the net result of the Townley transaction was the substitution of his note for that of J. J. Rieger, without the actual payment of any money; and that the real offense which the proof discloses was 'the abstraction of a credit, to wit, the Rieger note, which offense is not charged in that count of the indictment on which the conviction rests. It is erroneous, however, to assume or assert that none of the proceeds of the Townley discount were paid out by the bank; for, as we have heretofore shown, there was evidence from which the jury might well have concluded, and doubtless did conclude, that $345 was paid either to Townley in person, or to some one else pursuant to his order. But, aside from this view of the case, we are of opinion that money and funds of the bank (using the latter words in this instance as synonymous) were misapplied, notwithstanding the fact that the proceeds of the discount were not paid over the counter either to him or to any one else. By direction of the accused, and with full knowledge that the Townley note was worthless, or at least not properly secured, and would not be paid in full, the entire proceeds of the discount were placed to Townley's credit on the books of the bank, subject to his disposal. By that act the bank became his debtor to the amount of $15,345, and, according to the customs and usages of banks, was bound to honor his checks to the full amount of the fund standing

to his credit. What was thus done was plainly tantamount to paying the money to Townley or intrusting it to his custody, since it was placed at his disposal, and in the ordinary course of business the employés of the bank who had immediate charge of its funds would have honored his checks until the fund was exhausted. He did in fact dispose of the bulk of the fund by drawing his check in favor of Armstrong in payment for the stock which he had contracted to buy, and the check so drawn was honored in the customary way. The check subserved the purpose for which it was drawn, in that it paid for the stock and transferred the greater part of the proceeds of the discount to another, to be dealt with as he thought proper. We perceive no reason, therefore, why the act complained of (it having been done in the manner and for the purpose described in the indictment) should not be regarded as a willful and criminal misapplication of the bank's money and funds, although no money was actually handled or counted, inasmuch as the object which the parties had in view was accomplished as effectually as it would have been accomplished if the entire proceeds of the discount had been paid directly to Townley, and he in turn had paid $15,000 to Armstrong, and the latter had paid it to the accused. In the case of Dow v. U. S., 49 U. S. App. 605, 613, 27 C. C. A. 140; 82 Fed. 904, this court held that it is not always necessary that money should be actually withdrawn from a bank, to constitute a criminal misapplication of its funds, and that the offense may be consummated in other ways,—as by treating checks known to be worthless as good, and permitting them to be placed to the credit of a customer on the books of a bank with intent to defraud it, and in such a way that the bank becomes bound to the customer for the amount of the checks. In the case of U. S. v. Youtsey (C. C.) 91 Fed. 864, 867, which seems to have been carefully considered, it was ruled, in substance, that the charge of willfully misapplying the funds of a national bank would be sustained by proof that its cashier had discounted a worthless note, placed the proceeds to the credit of the maker, then transferred this credit to his own account by means of the maker's check, and subsequently made a pretended payment of a note which was held by the bank, of which he was one of the makers, by drawing his own check on his own account. No money was actually withdrawn in the course of this transaction, the end in view having been accomplished by transferring credits in the usual way, by means of checks; but a conviction was allowed as for a criminal misapplication of the bank's money. It is manifest to any one who is familiar with banking transactions that the funds of a national bank may be easily appropriated by its officers, either to their own use or to the use of third parties, without handling any of its money, by giving to some one a fraudulent credit on its books, and then permitting the credit to be shifted from one person to another by means of checks. By such means other persons may acquire a claim on the bank's funds which it cannot dispute. We are unwilling to hold, therefore, that the giving of a fraudulent credit, and permitting it to be transferred as genuine on the bank's books, does not amount to a criminal misapplication of its money

or funds, unless money is at the time actually withdrawn; for by such devices, which may assume different forms, and be skillfully contrived to escape observation and detection, gross frauds may be perpetrated, and gross wrong be done to a bank's customers and stockholders. We conclude that in the case in hand the evidence was fully sufficient to warrant the jury in finding that the defend- ant had been guilty of a criminal misapplication of the bank's funds, and that the contention to the contrary is not well founded.

Counsel for the accused furthermore suggest that in this instance the banking association sustained no less by the wrongful conduct of the accused, because the check which was delivered by Townley to Armstrong was ultimately delivered by the latter to the accused, and was by him employed to retire the Rieger note, which was of no more value than the Townley note. Concerning this suggestion it may be said that the record would not warrant this court in hold- ing that the one note was as worthless as the other, and that the bank eventually sustained no loss or injury. The accused was its president, and was in receipt of a considerable salary; and the J. J. Rieger note evidenced his own indebtedness to the bank, as the jury found. If a proposition to take the Townley note in payment for the Rieger note had been submitted to the board of directors of the Missouri National Bank, it is more than likely that it would have been speedily rejected. Moreover, the fact that the transac- tion complained of was not communicated to the directors, as it probably would have been if the accused acted at the time in good faith and without fraudulent intent, raises a strong presumption that he knew that it was detrimental to the bank's interests, and that it was undertaken by him for the purpose of reaping a per- sonal benefit or advantage at the expense of the bank. The jury, we think, were well warranted in drawing such a conclusion.

Some other questions have been raised by counsel that are of less importance than those already noticed, all of which have received our careful attention, but do not require special comment. Upon the whole, we are of opinion that no material error prejudicial to the accused was committed in the course of the trial, and that the conviction ought to be affirmed. It is so ordered.

SANBORN, Circuit Judge. I am unable to concur in the conclu- sion of the majority in this case, because, in my opinion, the plain- tiff in error has been tried and convicted of an offense with which he was not charged. The statute under which the indictment was drawn provides:

"Every president, director. cashier. teller, clerk, or agent of any associa- tion, who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of the association * * * with intent, in either case, to injure or defraud the association * * * shall be deemed guilty of a mis- demeanor and shall be imprisoned not less than five years nor more than ten."

Abstraction and misapplication are distinct offenses under this statute. The plaintiff in error has been tried and convicted of the abstraction from the bank of the promissory note of J. J. Rieger for $15,000, when the only charge against him was the misapplica-

tion of the funds and credits of the bank by the discount of the Townley note, and even this charge was not well pleaded. When the evidence had been produced it proved without contradiction that the only possible loss which the bank had sustained by the entire transaction detailed consisted in the abstraction from the bank of J. J. Rieger's promissory note of $15,000, and the possible loss of $345 of its funds that may have been checked out by Townley from the balance of his momentary credit of $15,345. The evidence was that when Townley's note was discounted he was credited with $15,345; that he gave Armstrong a check for $15,000; that Armstrong delivered this check to the plaintiff in error; that the latter charged this $15,000 to Townley on the books of the bank against the credit of $15,345 which he had given him, canceled the check, and abstracted from the bank the note of J. J. Rieger for $15,000. The charge in the indictment was a misapplication of the moneys, funds, and credits of the bank by means of the discount of the Townley note. When that note was presented for discount, Townley had no credit in the bank, and the bank held the note of J. J. Rieger. When that transaction was completed, Townley had a credit in the bank of $345, and the bank had surrendered the note of Rieger. No other funds or credits which the bank had when the note of Townley was presented had been applied, misapplied, or affected in any way by the transaction. Not a dollar of its moneys or funds had been drawn out or applied to the use of any one, and the only change in its credits was that the note of J. J. Rieger for $15,000 had been removed. It is true that in the course of the transaction a credit of $15,000 had been given to, and a debit of $15,000 had been charged against, Townley, but neither of these entries had withdrawn or affected a dollar of the moneys or a cent of the credits of the bank. It had just as many dollars of money and just as many credits after this $15,000 had been credited and debited to Townley as it had before these entries were made, with the single exception that the Rieger note was gone. The suggestion in the opinion of the majority that such credits and checks as these may in some other case result in creating liabilities and withdrawing the funds of the bank is without pertinency here. The question here is whether the mere entry of this debit and credit withdrew or misapplied any funds or credits of the bank in this case, and the evidence is conclusive and undisputed that the credit and debit of the $15,000 caused no loss or change of one dollar of value in the funds or credits of the bank, with the exception of the abstraction of the Rieger note. Nor is it material to the decision of this case whether or not there was evidence of the withdrawal of the odd $345 on the subsequent checks of Townley which would warrant a conviction of the plaintiff in error, because the court below was expressly requested, and refused, to charge the jury as follows:

"If in the Townley transaction no money passed, so far as concerned the taking up of J. J. Rieger's note, and the real transaction as to that was that the J. J. Rieger note was taken up with the Townley note, then you must find for the defendants, so far as concerns the charge of misapplication of the

$15,000, because there is no charge in the indictment that the note was abstracted, and the most the government could claim as to that particular transaction is that it was an abstraction, and not a misapplication."

This refusal was a positive ruling that although none of the moneys, funds, or credits of the bank were affected by the $15,000 transaction, except that the Rieger note was withdrawn, still the plaintiff in error might be convicted of a misapplication on account of this transaction. This, it seems to me, was an erroneous ruling, and the record is full of proof that it conditioned the trial of the only real issue in the case,—the question whether or not the plaintiff in error was guilty of abstracting the note of Rieger. It appears that this was the only real issue in the case, from the ruling just quoted, from the opinion of the majority, a large portion of which is devoted to this question, and from the following excerpt from the brief of the counsel of the government in this court:

"The charge in the indictment is that the defendant misapplied the moneys, funds, and credits of the bank. The position of the government is that the J. J. Rieger note for $15,000, which in fact represented the indebtedness of D. V. Rieger, was a fund or credit of the bank, and that the defendant misapplied this fund by taking it out from the funds of the bank, and having it entered paid on the books of the bank, and substituting therefor the worthless note of Benjamin W. Townley. This is precisely what was done in the Evans Case, 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830. In that case the note of one A. B. Nettleton for seventy-five hundred dollars, which the indictment averred was held by the said bank as and for funds and credits, was delivered to Nelson F. Evans without the sum of seventy-five hundred dollars or any part thereof being paid for the note. It is evident that no money passed in the Evans Case, the misapplication consisting in delivering up the Nettleton note without its being paid. So in the case at bar the misapplication consists in delivering up the J. J. Rieger note, and placing in its stead the worthless note of B. W. Townley."

This is a correct statement of the position of the government and of the court below in the trial of this case, and the reason why it was erroneous is that the indictment neither charged nor mentioned the abstraction of the note of Rieger. In the cases of Evans v. U. S., 153 U. S. 584, 589, 14 Sup. Ct. 934, 38 L. Ed. 830, and U. S. v. Youtsey (C. C.) 91 Fed. 864, it will be found that the indictments carefully and clearly set forth a description of the notes which were abstracted, and alleged that they had been taken from the bank with intent to injure and defraud it. The note abstracted in the former case was one made by A. B. Nettleton, and it is carefully described in the indictment, while those abstracted in the latter case were the notes of Berry and Youtsey, which will be found to be described in the same way. In the indictment in the case at bar there is no charge that the note of Rieger was abstracted from the bank, and no mention whatever of the note in the pleading. The proof was conclusive and undisputed that in the entry of the credit and debit of $15,000, and in the abstraction of the Rieger note in connection therewith, not one dollar of the funds of the bank was misapplied, and no credit of the bank, except the note which was withdrawn, was in any way affected. In no case can there be a misapplication of the funds or credits of a bank unless the funds or credits are lessened by the transaction. Dow v. U. S., 82 Fed.

904, 908, 27 C. C. A. 140, 144, 49 U. S. App. 605, 615.   The rule that the indictment must be free from all ambiguity, and leave no doubt in the minds of the accused and the court of the exact offense intended to be charged, required of the pleader in this case that he should clearly describe the note of J. J. Rieger for $15,000, and unequivocally charge the abstraction of that note, before the plaintiff in error could be tried and convicted of that misdemeanor.   Evans v. U. S., 153 U. S. 584, 587, 14 Sup. Ct. 934, 38 L. Ed. 830; U. S. v. Simmons, 96 U. S. 360, 24 L. Ed. 819; U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v. U. S., 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; In re Greene (C. C.) 52 Fed. 104.

Not only did the indictment fail to mention the note of Rieger, and fail to charge the abstraction of that note in any way, but it was fatally deficient in its pleading of a misapplication of the funds and credits of the bank.   It is not every misapplication that constitutes a misdemeanor, under the statute in question.   Hence a charge in an indictment that one has made an unlawful misapplication for the use of himself and others with fraudulent intent is insufficient.   The indictment must set forth in what manner, by what means, the illegal misapplication was made, and it must so set forth these means that it will clearly appear that through them an unlawful appropriation and conversion of the funds and credits of the bank was effected.   Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478; U. S. v. Eno (C. C.) 56 Fed. 218–220; U. S. v. Harper (C. C.) 33 Fed. 471, 477, 478; U. S. v. Northway, 120 U. S. 327, 332, 334, 7 Sup. Ct. 580, 30 L. Ed. 664; U. S. v. Britton, 107 U. S. 655–667, 669, 2 Sup. Ct. 512, 27 L. Ed. 520; Id., 108 U. S. 193, 196, 197, 2 Sup. Ct. 526, 27 L. Ed. 701; Mohrenstecher v. Westervelt, 87 Fed. 157, 161, 162, 30 C. C. A. 584, 588, 589, 57 U. S. App. 618, 627.   Under these decisions the first portion of this indictment, down to the words, "in the manner and by the means following:   That is to say,"—charges no offense, and the sufficiency of the pleading must be tested by the answer to the question whether or not its remaining averments show an unlawful appropriation or conversion of moneys or credits "for the use and benefit of David V. Rieger, Robert D. Covington, and other persons to the jury unknown."   When this portion of the indictment is carefully read and analyzed, it is found to charge nothing but the discount of the promissory note of an insolvent insufficiently secured.   These allegations may or may not show a misapplication of the funds, but they certainly do not disclose a misappropriation or conversion of any of them for the use or benefit of Rieger, Covington, or persons unknown to the jury.   They do not show in what manner or by what means the discount of the Townley note was used to enable Rieger, Covington, or any other person to convert or misapply any of the funds of the bank.   On the other hand, they allege a discount of Townley's note, and that averment necessarily negatives the misapplication of its proceeds for the use of Rieger, Covington, and other persons unknown, and alleges its appropriation to the use of the man whose note was discounted, to the use of Townley.

For these reasons, this indictment is, in my opinion, insufficient

to sustain a charge of a misapplication of the funds of the bank for the use of Rieger and the others mentioned therein. Much less is it sufficient to warrant the trial and conviction of the plaintiff in error for the abstraction of a credit of the bank, the note of Rieger, which is not in any way pleaded, mentioned, or referred to in the indictment. The judgment below should be reversed, and the case remanded for another trial.